UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13593-GAO

CITIBANK, N.A. as Trustee for the Benefit of SWDNSI TRUST SERIES 2010-3,
Plaintiff,

v.

RENEE ANNA NAJDA a/k/a RENEE NAJDA, ANDREW NAJDA, and
ANY and ALL OCCUPANTS,
Defendants and Counterclaimants,

v.

CITIBANK, N.A. as Trustee for the Benefit of SWDNSI TRUST SERIES 2010-3,
PENNYMAC, CORP., SPECIALIZED LOAN SERVICING, LLC,
PENNYMAC LOAN SERVICES, LLC, and CITIMORTGAGE, INC.,
Counterclaim Defendants.

OPINION AND ORDER
January 13, 2016

O'TOOLE, D.J.

This case began as a declaratory judgment action brought by Citibank, N.A. ("Citibank"). Citibank seeks declaratory judgment that it holds the note and the mortgage on Renee Najda and Andrew Najda's (the "Najdas") Concord, Massachusetts home. Citibank claims to hold both as trustee for a trust called SWDNSI Trust Series 2010-3 (the "Trust"). Citibank brings a number of other claims in order to pursue foreclosure.[1]

The Najdas answered and brought counterclaims against Citibank as well as a number of other banking and servicing companies (dkt. no. 13). The gist of their counterclaims is that

---

[1] Citibank now states that it has transferred its interest to the note and the mortgage to another entity, Christiana Trust, as trustee for PMT NPL Financing 2015-1, and has moved to substitute that entity for itself as the plaintiff (dkt. no. 76). The issues raised by that motion are not relevant to the pending motions to dismiss and are addressed later in this opinion.

ownership of the note and the mortgage is not as clear as Citibank presents it, and that CitiMortgage, Inc. ("CitiMortgage"), the originator of the loan, breached its agreement with the Najdas to forbear on pursuing foreclosure. In addition to contract, tort, and statutory damages, the Najdas seek declaratory judgment as to who owns the note and the mortgage. Some of the entities answered these claims, while others have moved to dismiss the Najdas' counterclaims.

PennyMac, Corp. ("PennyMac") and PennyMac Loan Services, LLC ("PLS"), move to dismiss the Najdas' counterclaims for failure to state a claim upon which relief can be granted (dkt. no. 25). Counts I and X of the Najdas' counterclaim are alleged against PennyMac, and Counts VIII and X are alleged against PLS.[2]

CitiMortgage also moved to dismiss the Najdas' counterclaims against it for failure to state a claim (dkt. no. 39). In response to CitiMortgage's motion, the Najdas subsequently amended their pleadings against CitiMortgage (dkt. no. 45). Consequently, CitiMortgage's initial motion to dismiss is moot. CitiMortgage responded with a new motion to dismiss all claims against it (dkt. no. 50). After full briefing and a hearing, that motion, and PennyMac and PLS' motion to dismiss, are now resolved in this order.

When evaluating a motion to dismiss, a court must "accept as true all well-pleaded facts in the [pleading] and draw all reasonable inferences in favor of the [claimants]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "To survive a motion to dismiss, the [pleading] must allege 'a plausible entitlement to relief.'" Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009).

---

[2] The Najdas originally included PLS in Count I, but later dismissed PLS from that count (dkt. no. 24).

**I.     Background**

Taking as true the content of the Najdas' pleadings, the factual basis for their counterclaims is as follows. In 2007, the Najdas, using CitiMortgage, refinanced the mortgage on their home. In 2009, they fell behind on making their mortgage payments. In telephone conversations in 2010, the Najdas and CitiMortgage came to an agreement in which the Najdas promised to pay an additional amount monthly in order to bring their account current (the "Forbearance Plan"). This plan was memorialized in a written document signed by Andrew Najda. (See Amended Countercl., Exs. A & B (dkt. nos. 45-1, 45-2).)[3] The Najdas claim that during the telephone conversation, CitiMortgage promised to immediately report their account as current and also promised to not institute or continue any foreclosure proceedings against them. In contrast, the written Forbearance Plan provides: "Your account will continue to be reported as delinquent to our credit reporting agencies until you bring your account current." (Amended Countercl., Ex. B, at 4.) The written agreement contains no affirmative promise by CitiMortgage not to bring foreclosure proceedings.

Shortly after the telephone call, CitiMortgage brought an action under the Massachusetts Soldiers' and Sailors' Civil Relief Act (a "servicemember proceeding") in order to confirm that the Najdas were not entitled to the benefits of the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901 et seq. [formerly 50 U.S.C. app. §§ 501 et seq.]. See generally HSBC Bank USA, N.A. v. Matt, 981 N.E.2d 710, 713–16 (Mass. 2013) (describing the statutory framework for such actions). CitiMortgage pursued no other foreclosure action but continued to report the Najdas' account as delinquent.

---

[3] At the motion to dismiss stage, a court may consider documents incorporated by reference in the complaint, as well as matters of public record, and "other matters of which the court may take judicial notice." See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

Throughout 2010, 2011, and 2012, the Najdas' attempted to sell their mortgaged property. By May 2011, they had learned of CitiMortgage's servicemember proceeding and, through counsel, unsuccessfully petitioned CitiMortgage to dismiss the action. The Najdas were also unsuccessful in selling the property. In June 2012, they received what they describe as a "lowball" offer for their house. According to their real estate broker, the pendency of the servicemember proceeding drove away potentially interested buyers. The Najdas claim that through the June 2012 lowball offer, they first learned of how the servicemember proceeding impacted the marketability of their property. The Najdas were eventually unable to continue paying under the Forbearance Plan.

Meanwhile, the underlying mortgage and note were shuttled between various banking entities. All assignments of the mortgage were publicly recorded, but there is little on the record as to the status of the note. As a part of its Complaint, Citibank alleges that it possesses the note and that the note is bearer paper. The Najdas plead that they know that CitiMortgage originally held the note, but that when they requested copies of the note from various entities, they received inconsistent versions in response, all purporting to be a true and accurate copy.

The Najdas also received letters from various entities as these papers were changing hands, often to inform them of changes in the identity of the holder or servicer of the loan. Relevant to the claims at issue here, on March 24, 2011, the Najdas received a letter from PLS which identified PennyMac as the new creditor for their loan. The Najdas later received another letter from PLS on August 11, 2014, identifying the Trust as the owner of their debt.

## II. PennyMac & PLS' Motion to Dismiss

The Najdas bring two claims against PennyMac—declaratory judgment (Count I) and violation of Massachusetts' consumer protection law, Chapter 93A (Count X)—and two claims

against PLS—violation of the Fair Debt Collection Practices Act ("FDCPA") (Count VIII) and violation of Chapter 93A (Count X). The Najdas' claims against PennyMac and PLS depend on their argument that Citibank is not the proper holder of the *mortgage*. The Najdas have not plausibly cast doubt on the mortgage transfers. For that reason and the others discussed below, all but Count I against PennyMac is dismissed.

    A.    <u>Declaratory Judgment Against PennyMac (Count I)</u>

The Najdas contest both whether Citibank holds the mortgage and whether it holds the note. Who holds the note is a factual question that cannot be resolved by the pleadings alone. The declaratory judgment count remains against PennyMac to that extent.

However, the Najdas have not plausibly shown that anyone other than Citibank holds the mortgage. As set forth in the pleadings, the recorded assignments show a clear, unbroken chain of title from Mortgage Electronic Registration System, Inc. ("MERS"), the original mortgagee as nominee, to Citibank.

The Najdas' first challenge to the title chain concerns a spurious assignment in the record. On August 27, 2012, PennyMac attempted to assign the mortgage to Citibank. However, at the time, CitiMortgage held the mortgage from an earlier assignment by MERS. Because PennyMac did not at that time hold the mortgage, PennyMac's attempted assignment was a nullity under Massachusetts law. See <u>Bongaards v. Millen</u>, 793 N.E.2d 335, 339 (Mass. 2003).[4]

Later, on September 18, 2012, CitiMortgage assigned the Najdas' mortgage to PennyMac. The Najdas allege that PennyMac's failed assignment somehow tainted CitiMortgage's assignment. That argument fails. Assignments of an interest in property rise and fall on their own

---

[4] Citibank does not claim that the spurious assignment was valid.

merits. See, e.g., Butler v. Deutsche Bank Trust Co. Americas, Civil Action No. 12-10337-DPW, 2012 WL 3518560, at *9 (D. Mass. Aug. 14, 2012).

PennyMac executed another assignment on June 24, 2014, assigning the mortgage to Citibank as trustee for the Trust. Since PennyMac then possessed the mortgage, it had the power to convey it. The Najdas challenge this assignment on the ground that it was not signed by an officer of PennyMac found within the scope of Massachusetts General Laws Chapter 183, Section 54B. Section 54B provides that a mortgage assignment is binding on an entity if a person purporting to hold one of a number of positions in that entity signs the assignment. Notably, the list includes a person "otherwise purporting to be an authorized signatory for such entity." M.G.L. ch. 183, § 54B. PennyMac's 2014 assignment was signed by a person purporting to be an "Authorized Representative." (See PennyMac & PLS' Mem. of Law in Supp. of Their Mot. to Dismiss Countercls., Ex. E, at 2 (dkt. no. 26-5).) That designation falls within Section 54B's broad "otherwise purporting" clause and comports with the section's relaxed signatory requirements. Cf. Sullivan v. Kondaur Capital Corp., 7 N.E.3d 1113, 1119–21 (Mass. App. Ct. 2014) (finding that a signature block which contained no statement at all of the signatory's position violated Section 54B).

Because the Najdas' challenges to the mortgage assignments fail, they have not pled a plausible claim for declaratory relief as to who owns the mortgage. Their claim for declaratory judgment against PennyMac is dismissed to that extent.

### B. FDCPA Claim Against PLS (Count VIII)

The Najdas claim that PLS violated the FDCPA when it sent the Najdas a letter identifying the Trust as the owner of their debt on August 11, 2014. Among other things, the FDCPA prohibits a debt collector from making a "false, deceptive, or misleading representation." 15 U.S.C. § 1692e.

6

The Najdas plead that the letter contains a false statement because at the time the Trust did not own the mortgage. As discussed above, the Najdas have not shown that the mortgage assignments were ineffective, and thus have not shown that anyone other than Citibank, as trustee for the Trust, owned the mortgage as of June 24, 2014. Thus, the letter did not contain a false or deceptive statement as alleged. This count is dismissed.

    C.    <u>Chapter 93A Claims Against PennyMac and PLS (Count X)</u>

Chapter 93A protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, § 2. "A practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998) (quoting <u>Linkage Corp. v. Trustees of Bos. Univ.</u>, 679 N.E.2d 191, 209 (Mass. 1997) (citation, internal quotation marks, and alterations omitted)). The outer limit of what conduct violates Chapter 93A is a question of law. <u>Milliken & Co. v. Duro Textiles, LLC</u>, 887 N.E.2d 244, 259 (Mass. 2008).

Here, the Najdas' claims that PLS acted unscrupulously fail. The Najdas have not pled facts that show that PLS' March 24, 2011 and August 11, 2014 notices were false or deceptive. Their pleadings include only speculation that someone else held the note and argument concerning allegedly improper mortgage assignments. These conclusory statements do not plausibly show that PLS sent the Najdas any inaccurate communication, let alone communication that was "unethical" or "oppressive." <u>See</u> <u>Arthur D. Little, Inc.</u>, 147 F.3d at 55 (quoting <u>Linkage Corp.</u>, 679 N.E.2d at 209).

The Najdas' Chapter 93A claims against PennyMac are similarly unfounded. They argue that PennyMac's multiple assignments violate the statute, yet point to no injury they suffered on

7

account of PennyMac executing these documents or show how this otherwise legal behavior—assigning interests in land—is unfair or deceptive. Cf. Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013) ("It is not enough in the context of Chapter 93A . . . to allege that defendants foreclosed . . . in violation of Massachusetts foreclosure law. Something more is required . . . .").

The Najdas also allege that PennyMac is vicariously liable under Chapter 93A for CitiMortgage's actions, yet nowhere do they plead facts supporting the proposition that CitiMortgage is an agent for PennyMac, or establish that the entities are related in any way.[5] The Najdas' Chapter 93A claims against PennyMac and PLS are dismissed.

### III. CitiMortgage's Motion to Dismiss

The Najdas bring eight claims against CitiMortgage: declaratory judgment (Count I), slander of title (Count II), breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), promissory estoppel (Count V), negligent misrepresentation (Count VI), unjust enrichment (Count VII), and unfair or deceptive trade practices under Chapter 93A (Count X). For the reasons explained below, all but Counts I, V, and X are dismissed.

#### A. Declaratory Judgment (Count I)

For the reasons already discussed, the Najdas do not plead sufficient facts to plausibly put the holder of the mortgage in question, and this count is dismissed against CitiMortgage as to the mortgage. However, because who holds the note is a factual question, their claim for declaratory judgment remains live to that extent.

---

[5] Only Citibank has filed a corporate disclosure statement in accordance with Local Rule 7.3.

B.   Slander of Title (Count II)

The Najdas claim that CitiMortgage slandered their title by bringing a servicemember proceeding in 2010. The Najdas allege that in conjunction with this action, CitiMortgage filed an affidavit stating that it was the mortgagee, dated October 7, 2010. This affidavit was false, the Najdas argue, because CitiMortgage was not assigned the mortgage by MERS until October 13. The Najdas argue that the servicemember action harmed them by clouding their title, leading to the lowball offers they received when they tried to sell their house.

Slander of title in Massachusetts involves the publication of a false statement that harms the interests of another. See Dulgarian v. Stone, 652 N.E.2d 603, 609 (Mass. 1995). Fatal to the Najdas' claim is that they do not plead how the allegedly false statement—that CitiMortgage held the mortgage six days earlier than it actually did—harmed them. Their claimed injury flows from the filing of the servicemember proceeding, not from the fact that CitiMortgage, as opposed to some other entity, filed the action. It was not the false statement that allegedly injured the Najdas, it was the filing of the legal action. Without any causal connection between the false statement and their injury, their claim fails.[6]

C.   Breach of Contract & the Covenant of Good Faith & Fair Dealing (Counts III & IV)

The Najdas contend that CitiMortgage breached the Forbearance Plan with them. Specifically, they claim that CitiMortgage breached its promise to (1) list the Najdas' account as current and (2) not pursue any foreclosure proceedings. The Najdas state that CitiMortgage agreed

---

[6] This claim additionally fails because it is based entirely upon statements contained in judicial filings. Such statements are absolutely privileged under Massachusetts law. Correllas v. Viveiros, 572 N.E.2d 7, 10 (Mass. 1991).

9

to these terms in a phone conversation, but that these terms did not make it into the written agreement.

The Najdas' contract claims are barred by the statute of frauds. See M.G.L. ch. 259, § 1. Contracts to forbear on mortgage rights fall within the statute. See Montuori v. Bailen, 194 N.E. 714, 716 (Mass. 1935). If a written contract within the statute contradicts or is silent as to a term a party claims was in the oral agreement, the party is barred from claiming under that term. See A. B. C. Auto Parts, Inc. v. Moran, 268 N.E.2d 844, 847 (Mass. 1971).

Since neither of the terms the Najdas wish to enforce are contained within the written version of the Forbearance Plan, they cannot assert a breach of contract claim upon them. They likewise cannot assert a claim for breach of the covenant of good faith and fair dealing because they have no claims on the substantive terms of the contract. The covenant does not create any additional rights or duties beyond the contracts' terms. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008). These counts must be dismissed.

### D. Promissory Estoppel (Count V)

The Najdas also seek to hold CitiMortgage to the same two promises under a theory of promissory estoppel. Promissory estoppel requires that one party make a promise that induces another to reasonably rely on that promise. See Anzalone v. Admin. Office of the Trial Court, 932 N.E.2d 774, 786 (Mass. 2010).

The Najdas cannot succeed in a claim for promissory estoppel as to CitiMortgage's first alleged promise, that it would report the Najdas' account current. The written Forbearance Plan is unambiguous that the Najdas' account would remain delinquent while the plan was in place. (See Amended Countercl., Ex. B, at 4.) Thus, it would be unreasonable as a matter of law for the Najdas to have relied on CitiMortgage's alleged promise that their account would be listed as current. See

10

HSBC Realty Credit Corp. (USA) v. O'Neill, Civil Action No. 12-11733-RGS, 2013 WL 362823, at *4 (D. Mass. Jan. 30, 2013), aff'd, 745 F.3d 564 (1st Cir. 2014); cf. Masingill v. EMC Corp., 870 N.E.2d 81, 89 (Mass. 2007) (finding reliance on statement in contradiction of written contract unreasonable as a matter of law for claim of negligent misrepresentation).

However, the Najdas do plausibly state a claim for promissory estoppel as to CitiMortgage's second alleged promise, that it would not pursue foreclosure. The Najdas claim that CitiMortgage promised it would not bring a foreclosure action, that they paid under the Forbearance Plan with that promise in mind, that CitiMortgage breached this promise by bringing the servicemember proceeding,[7] and that this proceeding adversely affected the marketability of their property. The written Forbearance Plan contains no term that contradicts that promise. Thus, the Najdas adequately plead a claim for promissory estoppel as to that alleged promise.

### E. Negligent Misrepresentation (Count VI)

The Najdas bring a claim for negligent misrepresentation on the same broken-promise facts. As a tort, negligent misrepresentation has a three year statute of limitations. See M.G.L. ch. 260, § 2A. The Najdas first brought their claims against CitiMortgage on December 15, 2014, more than three years after CitiMortgage initiated the servicemember proceedings. The Najdas argue that the discovery rule should toll the statute of limitations for this claim. Under the discovery rule, "a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." Harrington v. Costello, 7

---

[7] While servicemember proceedings are not technically part of foreclosure actions, see Matt, 981 N.E.2d at 715–16, at the motion to dismiss stage, the Najdas adequately allege that such an action is understood to be part of the foreclosure process in Massachusetts and that that understanding damaged their property's marketability.

N.E.3d 449, 455 (Mass. 2014). In their pleadings, the Najdas allege that they first learned of the servicemember proceeding in May 2011, at which time they petitioned CitiMortgage to dismiss the action. However, they also argue that they did not learn how the servicemember action harmed the value of their house until June 2012, when they received the lowball offer.

The discovery rule does not save this claim from being time-barred. The Najdas knew of the claimed wrongful conduct—the commencement of the servicemember action—in May 2011; according to them, in commencing the action CitiMortgage breached what they allege was a binding agreement. They cannot now claim that they were unaware of any harm done to them because they did not have an exact dollar figure for damages until 2012. Indeed, the Najdas had their legal counsel petition CitiMortgage to drop the servicemember action in 2011. Thus, the cause of action accrued at the latest in May 2011, more than three years before the Najdas filed their claim against CitiMortgage. The negligent misrepresentation claim is time-barred.[8]

### F. Unjust Enrichment (Count VII)

Unjust enrichment is an equitable claim that ordinarily is inapplicable "where there is a valid contract that defines the obligations of the parties." Bos. Med. Ctr. Corp. v. Sec'y of the Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1132 (Mass. 2012) (citing Restatement (Third) of Restitution and Unjust Enrichment § 2). Here, the Forbearance Plan, the note, and the mortgage govern the rights of the parties. The Najdas' claim for unjust enrichment is inappropriate in this circumstance and must be dismissed.

---

[8] In any event, the negligent misrepresentation claim stands on shaky ground. While fraudulent misrepresentation can encompass false statements of present intention regarding future conduct, see Starr v. Fordham, 648 N.E.2d 1261, 1267 (Mass. 1995), it is unclear how one could *negligently* misrepresent one's present intention of future conduct. Notably, the Najdas did not plead fraud. The Najdas' claim on these facts is better understood as one for promissory estoppel.

### G. Chapter 93A (Count X)

The Najdas also bring a Chapter 93A action against CitiMortgage for its actions with regards to the Forbearance Plan. The gist of the Najdas' Chapter 93A claim against CitiMortgage is that it treated them unfairly by promising one thing over the phone and doing another on paper. Those factual allegations plausibly create a claim for relief under Chapter 93A.

### IV. Other Outstanding Motions

While the motions to dismiss were pending, the parties filed a number of other motions. CitiMortgage moved to stay discovery pending the outcome of its motion to dismiss (dkt. no. 72). PennyMac and PLS joined that motion (dkt. no. 78). As this order resolves the outstanding motions to dismiss, those discovery motions are now moot. Citibank and Specialized Loan Servicing, LLC ("SLS") also move for an extension of time until January 15, 2016 to serve several discovery responses (dkt. no. 79). That motion is granted *nunc pro tunc*.

Citibank also notified the Court that it has since transferred its interest in the note and mortgage to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 ("Christiana Trust"), and moves to substitute Christiana Trust for itself as plaintiff (dkt. no. 76). In the same motion, Citibank also seeks leave to amend its complaint to add Santander Bank N.A., f/k/a Sovereign Bank, N.A. ("Santander") as a party-in-interest. Citibank claims that it discovered that Santander holds a junior mortgage on the Najdas' home.

The Najdas' oppose adding Santander as a party-in-interest on several grounds, among them that doing so will complicate the litigation. They argue that "[i]f Santander is joined as a party, defendants/counterclaim plaintiffs will need to assert multiple claims against Santander to preserve those claims." (Defs./Countercl. Pls.' Opp. to Pl.'s Mot for Leave to Amend Its Compl.

13

& to Substitute Party Pl. 6 (dkt. no. 81).) The Najdas are incorrect. In a foreclosure action by a senior mortgagee, the mortgagor—here, the Najdas—and the junior mortgagee—here, Santander—would both be defendants. See, e.g., First Colonial Bank for Sav. v. Bergeron, 646 N.E.2d 758, 759 (Mass. App. Ct. 1995). Thus, a hypothetical claim by the Najdas against Santander would properly be labelled as a crossclaim. Crossclaims, unlike some counterclaims, are not compulsory under the Federal Rules of Civil Procedure and do not need to be brought in the same action in order to preserve them. See Fed. R. Civ. Pro. 13(g).

However, as written, the Proposed Amended Complaint raises another issue. Federal jurisdiction in this case is based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1). The Proposed Amended Complaint states that Christiana Trust is domiciled in Delaware. It also identifies Delaware as Santander's domicile, calling into question this Court's subject matter jurisdiction. See Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138–42 (1st Cir. 2004). Citibank's motion is therefore denied without prejudice. Citibank may file additional motions to add these parties on a showing that doing so would be consistent with this Court's subject matter jurisdiction.

## **V.** **Conclusion**

For the foregoing reasons, PennyMac and PLS' Motion to Dismiss Counterclaims (dkt. no. 25) is GRANTED in part and DENIED in part. All claims are dismissed as to PLS, and PLS is dismissed from the case. Count X is dismissed as to PennyMac, and Count I is dismissed as to PennyMac to the extent that it asserts a controversy regarding the ownership of the mortgage. Count I otherwise remains concerning the ownership of the note.

CitiMortgage's initial Motion to Dismiss (dkt. no. 39) is MOOT. CitiMortgage's renewed Motion to Dismiss (dkt. no. 50) is GRANTED in part and DENIED in part. Counts II, III, IV, VI,

and VII are dismissed as to CitiMortgage. Count I is dismissed as to CitiMortgage to the extent that it asserts a controversy regarding the ownership of the mortgage. Count V is dismissed to the extent that it asserts a claim for promissory estoppel on the theory that CitiMortgage promised to make the Najdas' account current. Counts I and V otherwise remain and Count X remains.

CitiMortgage's Motion to Stay (dkt. no. 72) and PennyMac and PLS' Joinder of Counterclaim Defendant CitiMortgage's Motion to Stay Discovery (dkt. no. 78) are both MOOT. Citibank and SLS' Motion for an Extension of Time to Serve Discovery Responses to Defendants (dkt. no. 79) is GRANTED *nunc pro tunc*. Citibank's Motion for Leave to Amend Its Complaint and to Substitute Party Plaintiff (dkt. no. 76) is DENIED without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge