# EXHIBIT K

**HARMON LAW OFFICES, P.C.**
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389
TEL (617) 558-8400
FAX (617) 244-7304
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

NATHALIE K. SALOMON
(617) 558-8432
(617) 617-243-4045 facsimile
nsalomon@harmonlaw.com

**Via certified mail and
First class mail**

March 11, 2014

Andrew Najda
And Renee Najda
71 Flint Road
Concord, MA 01742

Certified Article Number
7196 9008 9111 2367 3272
SENDERS RECORD

Re:   Mortgaged Property: 71 Flint Road, Concord, MA 01742 ("Property") – Loan # 2004550654 ("Loan")

Dear Mr. and Ms. Najda:

  I am writing as counsel for CitiMortgage, Inc. ("CitiMortgage"), the prior servicer of the above-referenced loan and prior mortgagee. This letter is written in response to your letter dated February 1, 2014 purported to be a proper demand letter ("demand letter") under the provisions of M.G.L. c.93A. CitiMortgage denies that it has engaged in any unfair or deceptive acts or practices for the reasons explained below.

**RELEVANT FACTS**

  1. On August 3, 2007, the Najdas executed a note ("Note") of $3,464,00.00 in favor of CitiMortgage. A true and accurate copy of the Note is attached hereto as <u>Exhibit A</u>.

  2. On August 3, 2007, to secure the payment of the Note, Renee Najda executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). A true and accurate copy of the Mortgage is attached hereto as <u>Exhibit B.</u>

  3. In April 2009, the Najdas defaulted on their mortgage payments. To assist the Najdas, CitiMortgage offered them a 2-month moratorium for their payment, for April 2009 and June 2009.

  4. In the summer of 2010, the Najdas defaulted again on their mortgage payments.

5. On October 11, 2010, CitiMortgage retained Harmon Law Offices ("Harmon") to proceed with foreclosure.

6. On October 13, 2010, MERS assigned the Mortgage to CitiMortgage. The assignment was recorded on October 25, 2010. A true and accurate copy of the assignment is attached hereto as Exhibit C.

7. On October 13, 2010, CitiMortgage and Mr. Najda discussed a possible 6-month repayment plan. During that discussion, CitiMortgage reiterated that the loan had been referred to foreclosure. To be considered for a repayment plan, CitiMortgage explained that Mr. Najda must make a down payment of $10,793.97 and also pay the foreclosure legal fees and costs. He was also informed that once he receives the repayment plan, he must sign it, date it and return it to CitiMorgage.

8. On October 15, 2010, once CitiMortgage received the down payment and payment for the foreclosure fees and costs, CitiMortgage offered a 6-month repayment plan ("repayment plan"). Mr. Najda was informed of the same and a letter was accordingly to the Najdas. A true and accurate copy of the offer is attached hereto as Exhibit D.

9. On October 21, 2010, CitiMortgage faxed the repayment plan to Mr. Najda. The repayment plan explains that the Najdas' account "is now **delinquent** for the months of 07.01.10 through 10.01.10 for $41,709.55" (emphasis added) and that the Loan will continue to reported as delinquent until all payments are made. It also explained that to accept the repayment plan, the Najdas must sign it and return it. In particular, the repayment plan states in pertinent part as follows:

> "PLEASE **SIGN THE ATTACHED AGREEMENT AS YOUR ACCEPTANCE** OF THE PLAN AND RETUN IT TO OUR OFFICE IMMEDIATELY."
>
> "Your account **will continue to be reported as delinquent** to our credit reporting agencies until you bring your account current." (emphasis added).

Id.

10. On October 22, 2010, CitiMortgage filed a complaint under the Servicemembers Civil Relief Act ("SCRA") (docket no.10 MISC 441991), along with an Affidavit. A true and accurate copy of the Complaint and Affidavit are attached hereto as Exhibit E.

11. The same day, on October 22, 2010, Mr. Najda executed the repayment plan and faxed it to CitiMortgage. See Exhibit D.

12. CitiMortgage promptly instructed its foreclosure counsel, Harmon Law Offices, to place the foreclosure proceeding on hold.

13. CitiMortgage took no further action with the foreclosure proceeding – it did not set a foreclosure sale, did not publish a foreclosure sale notice and did not send notices of sale to the

interested parties. As also shown on the docket, CitiMortgage took no further action with the SCRA action. For instance, when the Land Court issued an order of notice for service, for recording and for publication on March 4, 2011, CitiMortgage did not serve, record or publish the order of notice. A true and accurate copy of the docket report is attached hereto as Exhibit F.

14. CitiMortgage did not immediately dismiss, however, the SCRA action because the Loan remained in default – under the repayment plan, the Loan was considered delinquent until all payments were made through March 30, 2012. *Id.* See alo Repayment Plan, p. 2, Exhibit C.

15. In April 2011, while the Loan was still delinquent and the repayment plan still in place, the Loan was service transferred from CitiMortgage to Specialized Loan Servicing, LLC. CitiMortgage's involvement in the servicing of the Loan ended then.

16. In 2012, CitiMortgage assigned the Mortgage to PennyMac Corp. (PennyMac Corp.) Upon information, PennyMac Corp. assigned the Mortgage to Citibank, N.A., as trustee for the benefit of SWDNSI Trust Series 2010-3. True and accurate copies of the recorded assignments are attached hereto as Exhibit G.

17. On October 18, 2013, Citibank filed a new complaint[1] under the SCRA (docket no.13 MISC 480118). True and accurate copy of the docket report is attached hereto as Exhibit H.

18. On February 12, 2014, since a new SCRA complaint had been filed by Citibank, the mortgagee of record, CitiMortgage filed a motion to dismiss the 2010 SCRA action. See Exhibit F.

19. On February 12, 2014, the Land Court dismissed the 2010 SCRA action. *Id.*

20. The 2013 SCRA action filed by Citibank is pending. See Exhibit H.

## ARGUMENT

**I-      The Najdas' fraud claim based on the affidavit fails because (1) the Najdas' have no standing to raise a claim in the SCRA action and (2) the affidavit is accurate.**

You challenge CitiMortgage's authority to bring the 2010 SCRA action. In particular, you contend that the affidavit, executed on October 7, 2010, was false because it stated that CitiMortgage was the mortgagee but the assignment of mortgage from MERS to CitiMortgage was not executed until October 13, 2010. Your fraud allegation fails as a matter of law for two reasons: (1) you lack standing to make a claim related to the SCRA action and (2) for purposes of the SCRA action, CitiMortgage was a "mortgagee" as defined by the Supreme Judicial Court.

The SCRA action is not part of the foreclosure process nor is it necessary to the foreclosure process. *HSBC Bank USA v. Matt*, 464 Mass. 193, 197 (2013). "It simply ensures that a foreclosure will not be rendered invalid for failure to provide the protections of the SCRA

---

[1] As an alternative to filing a new SCRA action, Citibank could also have proceeded with the 2010 SCRA action by filing a motion to substitute party (to change the name of the plaintiff in light of the service transfer and assignments).

3

to anyone so entitled, an assurance that also could be obtained at a postforeclosure action to quiet title under G.L.c. 240, §6." *Id.* In essence, a person entitled to the benefits of the SCRA is a person who is on active military duty. As explained by the Supreme Judicial Court (SJC), a nonservicemember, however is "not entitled to appear or be heard at the servicemember proceeding." *Matt*, supra at 194. Since you are not a servicemember, you are not entitled to raise a claim regarding the 2010 SCRA action.

In any event, when CitiMortgage executed the Affidavit on October 7, 2010, it was a "mortgagee" for purposes of the SCRA action. Indeed, the SJC adopted the definition of mortgagee as "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." *Id.*, at 200, fn.10. The complaint (form provided by the Land Court), states "Your Plaintiff is the holder of the mortgage with the statutory power of sale given by ..." Therefore, under the definition of "mortgagee" adopted by the SJC, a servicer acting on behalf of mortgagee, can bring the SCRA action as the "mortgagee." Here, it is undisputed that CitiMortgage was the servicer when it executed the Affidavit. Additionally, it is undisputed that by the time CitiMortgage filed the complaint on October 22, 2010, along with the Affidavit, CitiMortgage was also the holder by assignment of the mortgage (assignment dated October 13, 2010.) See Exhibit C. Therefore, your claim fails.

**II-    The Najdas' fraud claim based on the MERS assignment of mortgage fails as a matter of law because the assignment is valid.**

You make a bold assertion that the MERS assignment is a "false mortgage assignment" created solely to "facilitate this foreclosure action with MERS acting as a nominee for CitiMortgage assigning the mortgage back to CitiMortgage." Here, while you executed the Note in favor of CitiMortgage, you executed the Mortgage in favor of MERS, clearly identified as the "mortgagee" under the terms of the Mortgage. Definition C, page 1 of the Exhibit B (Mortgage) ("MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.**"). Your contention is premised on the incorrect belief that only the holder of the Note can assign the Mortgage.

As explained recently by the Court of Appeals in *Culhane v. Aurora Loan Services of Nebraska*, 708 F. 3d 282, (2013), "[a] mortgage loan involves the borrowing of money by one party, who secures the loan by means of a mortgage on a piece of property." *Culhane*, *supra* at 292. "It requires the execution of two separate but related, contracts: a promissory note and a mortgage. *Id.*, citing *Eaton*, 969 N.E.2d at 1124. "In Massachusetts, the note and the mortgage need not be held by the same entity." *Id.* "The two instruments exist on separate planes, and the transfer of the note does not automatically transfer the mortgage." *Id.*

In this instance, as in *Culhane*, you executed the Note in favor of an entity different than the mortgagee: the Note was given in favor of CitiMortgage while the Mortgage was given to MERS. Here, CitiMortgage was the only entity entitled to transfer the Note, but MERS was the only entity that could assign the Mortgage. By executing the Mortgage, you also expressly authorized MERS, its successors and <u>assigns</u> to foreclose under the power of sale as follows:

4

> "Borrower does hereby **mortgage, grant and convey to MERS** (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, **with power of sale**, the following described property . . ." (emphasis added).

See page 3 of the Mortgage under Transfer of Rights in the Property (Exhibit B).

Thus, the Mortgage clearly gives MERS **and the assigns of MERS**, in this instance CitiMortgage, authority to exercise the power of sale (emphasis added). The Mortgage also expressly provides the following:

> "Borrower understands and agrees that MERS **hold only legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns)** has the right: to exercise any or all of those interests, including but not limited to foreclose and sell the Property" (emphasis added).

*Id.*, page 3.

Therefore, contrary to your allegation, the assignment from MERS to CitiMortgage is a valid assignment.

You also suggest that the assignment is defective because it was executed by "Kim Krakoviak, a robo signer." This allegation is similar to the one made *Peterson v. GMAC Mortg., LLC* where the borrower challenged the validity of the assignment of mortgage on the basis that the signatory was a "well known robo- signer" and thus there was "reason to believe that the signature was not genuine." *Peterson v. GMAC Mort.*, LLC 2011 WL 5075613, at *1 (D. Mass October 25, 2011). The governing statute regarding the validity of assignments is G.L. c.183, § 54B, which provides in pertinent part the following:

> "Notwithstanding any law to the contrary, a[n] . . . assignment of mortgage . . . if executed before a notary public, . . . whether executed within or without the commonwealth, by a person <u>purporting</u> to hold the position of . . . vice president, . . . secretary, . . . or other similar office, including assistant to any such office or position, of the entity holding such mortgage, or otherwise <u>purporting</u> to be an authorized signatory for such entity . . . shall be <u>binding</u> upon such entity. . ." (emphasis added).
> G.L. c.183, § 54B.

The Court in *Peterson* held that "[t]he heart of the ch. 183, § 54B inquiry, therefore, is whether (1) a person purporting to be an authorized signatory of the mortgage holder, (2) executed the assignment before a notary public or otherwise authorized office." *Id.*, at *4, citing *Aliberti v. GMAC Mortgage, LLC*, 779 F. Supp. 2d, 242, 249 (D. Mass. April 28, 2011). "Whether such individual has *actual authority* is not a concern addressed by the statute." *Id.*, citing *Kiah v. Aurora Loan Services, LLC,* 2011 WL 841282, at *7 (D. Mass. March 4, 2011). "The assignor is not required to prove or validate the authority of the underlining signatories." *Id.*, citing *In re Marron*, 455 B.R. 1, at *8 (Bankr. D. Mass. 2011). "If the requirements of ch.

5

183 § 54B are met, the court may properly find the entire assignment valid." *Id.*, citing *Carlson v. Wells Fargo Bank*, 2011 WL 3420436, at *6 (Bankr. D. Mass. 2011).

Here, the signature of Kim Krakoviak, as assistant secretary of MERS is clearly on the MERS assignment. Moreover, the signature of Kim Krakoviak is clearly notarized by Amy L., Meyer of Lincoln County, Missouri, who indicates that Kim Krakoviak personally appeared before her. Therefore, similarly to *Peterson*, the assignments in this case "mee[t] the requirements of ch. 183 § 54B and [are] facially valid" because they were executed before a notary public by a person purporting to be an authorized signatory of the mortgage hold. *Id.*

Moreover, as in *Peterson*, your c.93A demand letter fails to articulate facts sufficient to challenge the validity of the mortgage assignment under Mass. Gen. Laws ch. 183 § 54B." *Id.*, at *5. By calling Kim Krakoviak a "robo-signer," you are making nothing more than an unsupported allegation. In dismissing the borrower's claim, the Court in *Peterson* explained as follows:

> "The bare speculative and conclusory assertion that John Kerr is a known robo signer is not entitled to any weight by the court. Further, as plaintiffs state, robo signer are 'people who did not even review the documents before signing and recording' them – therefore, even if accepted as true, these allegations do not indicate that John Kerr's signature was a forgery, only that he may not have reviewed the assignment carefully before signing it . . . For these reasons, the complaint does not plead facts sufficient to challenge the validity of the mortgage
> *Id.*, at *5.

In this instance, "the bare and speculative assertion" that Kim Krakoviak may have been a "robo signer" will "not be entitled to any weight" by any court of law. *Id.* In a recent decision, *Boulanger v. Wells Fargo Bank, N.A.*, (Hampshire Superior Court docket 12-050), the Court (Rupp, J.) concluded that where the assignment is notarized after execution by a person "who purported to be director of the assignor, [it is] valid, and the **homeowners are not entitled to look behind it**" (emphasis added). A true and accurate copy of the decision, dated February 28, 2014 (order on defendant's motion to dissolve the injunction) is attached hereto as <u>Exhibit I</u>, at p5. Therefore, your claim fails as a matter of law.

**III- The breach of contract claim fails as a matter of law because you do not identify any provision that CitiMortgage allegedly breached and CitiMortgage's conduct breached no contractual provision.**

You contend that CitiMortgage breached the binding forbearance agreement by "pursuing the improper foreclosure process, Land Court case #10-MISC 441991" (case still remains open) in excess of 3 years, which is a breach of contact." As explained above, however, the SCRA action is not part of the foreclosure process. In any event, you do not identify any provision of the agreement that CitiMortgage allegedly breached. This case is similar to *Foregger v. Residential Credit Solutions*, 2013 WL 3208596 (D. Mass.), where the borrower raised a breach of contract claim without identifying "any specific provisions of the mortgage contract that RCS has violated." As the Court (Saylor, J.) observed, "[t]o prevail on a claim for breach of contract, plaintiff must do more than simply allege that there was a contract, and that defendant breached

6

it." *Foregger, supra* at *5. "Instead, plaintiff 'must describ[e], with substantial certainty, the specific contractual promise the defendant failed to keep." *Id.*, quoting *Bean v. The Bank of New York Mellon*, 2012 WL 4103913, at *9 (D. Mass. September 18, 2012).

Here, as in *Forreger*, you do "not describe with specificity any contractual promise that you allege CitiMortgage did not keep." *Id.* The repayment plan contains no provision where CitiMortgage agreed to dismiss the pending SCRA action. In fact, and as explained above, the Repayment Plan clearly explains that the loan remains delinquent until all payments are made. You claim that "[u]known to the Najdas, during the entire year while they were making timely forbearance payments, CitiMortgage and Harmon, on parallel track, continue to proceed with the foreclosure action in the Land Court." That statement is not true. As shown in the docket, CitiMortgage took no action after it filed the Complaint on October 22, 2010. To the contrary, the foreclosure process was promptly placed on hold shortly after the receipt of the repayment plan on October 22, 2010.

Additionally, your claim that CitiMortgage assessed "excessive legal fees" is unfounded. Here, the amount of legal fees and costs associated with the 2010 foreclosure is approximately $1,440.00. That amount consists of foreclosure fees of $750 and costs of about $690 (such as court filing fee and title search). These fees are costs are not conceivably "excessive." Furthermore, by agreeing and paying the legal fees to be considered for a repayment plan, you are estopped from now claiming that the legal fees were "excessive." Therefore, your claim fails as a matter of law.

**IV-  The Najdas' claim of breach of good-faith and fair dealings fails as a matter of law.**

Your claim of breach of good-faith and fair dealings is predicated on the alleged "the improper foreclosure process, Land Court case #10-MISC 441991" (case still remains open) in excess of 3 years, which is a breach of contact." Your claim is also predicated on the allegation that CitiMortgage refused to modify the terms of the Loan.

"Every contract includes an implied covenant of good faith and fair dealing." *Forreger, supra* at *6, citing *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010). "The covenant requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract.'" *Id.* "The covenant is not however, meant to be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.'" *Id.*, quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376 Mass. 376 (2004). As already explained, the Repayment Plan did not impose any duty on the part of CitiMortgage to dismiss a pending SCRA action. Moreover, nothing in the repayment plan, the mortgage or the note, imposes on duty on CitiMorgage to modify the terms of the Loan. Therefore your claim fails as a matter of law.

**V-  CitiMortgage's conduct is not unfair and deceptive.**

Your c.93A claim clearly fails because you have not demonstrated that CitiMortgage's conduct cause you any "injury." In order to recover under G.L. c.93A §9, you must prove that you were "injured." See G.L. c.93A §9. The burden of proof is on you to establish that the alleged unfair and deceptive acts or practices caused you an "injury." Massachusetts Legislature

7

did not intend Chapter 93A §(1) to "confer on plaintiffs who have suffered no harm the right to receive a nominal damage award . . . The plaintiff has the burden of establishing that the Defendants' behavior caused him an "injury". This is a precondition for recovery; in its absence, the defendant is entitled to judgment." *Lord v. Commercial Union Ins. Co.* 60 Mass. App. Ct. 309, 321-22 (2004); see also *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 401 (2004) (recognizing that in *Lord*, the court "states nothing more than what our own decisions have made perfectly clear – causation is a required element of a successful G.L. c.93A claim"), citing *Massachussetts Farm Bur. Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 403 Mass. 722, 730 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery"); and *International Fid., Ins. Co. v. Wilson*, 387 Mass. 841, 850 (1983) ("Plaintiff must show . . . a causal connection between the deception and the loss.")

In sum, your claim that you suffered damages as a result of CitiMortgage's alleged unfair and deceptive practices is not credible. You do not dispute that the Loan was in default when CitiMortgage retained counsel to commence a foreclosure proceeding and SCRA action. As you concede in your demand letter, due to the economy and irregular cash flow in your companies, you were unable to make your mortgage payments in a timely manner through the fall of 2010. At that time, the Loan had been delinquent since July 2010 you owed over $40,000 in arrears. Thanks to CitiMortgage's efforts in assisting you to avoid foreclosure, you obtained an 18-month repayment plan allowing you to stop the pending foreclosure proceeding and pending SCRA action. By accepting the repayment plan (on October 22, 2010 when you returned it signed to CitiMortgage), you did not bring the Loan current. Instead, as clearly stated in the repayment plan, it allowed you to pay your arrearages through a period of 18 months but the account was still considered delinquent, and reported as such to the credit reporting agencies, until "you bring your account current." See Exhibit D, repayment plan, p.3.

Here, you allege that you have suffered damages *merely* because CitiMortgage did not promptly dismiss the 2010 SCRA action, in that it affected your "ability to sustain "your financial livelihood, ability to sell the property and significantly impacted [your] health." There is no plausible reason that you could not sell the property because of the 2010 SCRA action – this type of action does not prevent a property from being sold.

As to your claim that CitiMortgage's conduct affected your health and your financial livelihood (presumably meaning your spending habits), it fares no better. The fact of the matter is that in October 2010 you were in default of your mortgage payments and, upon information and belief, to date you still have not brought the Loan current despite the opportunity given to you by CitiMortgage to avoid foreclosure through the repayment plan. As you concede, you retained counsel to have the case 2010 SCRA case dismissed. Your attorney reached out to CitiMortgage's counsel requesting that CitiMortgage voluntarily dismiss the case, and he was informed that CitiMortgage declined to do so (since the Loan was still delinquent). Your attorney, however, took no action to obtain from the Land Court a dismissal of the 2010 SCRA action. Any damages you claim you have because the pending 2010 SCRA action, which are denied, could have simply been mitigated by simply obtaining a dismissal from the Court. You and your attorney chose not to do so. Therefore, your c.93A claims must fail. *Burnahm v. Mark IV Homes, Inc.*, 387 Mass. 575, 586 ("[t]he general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions of his part."); see also *Hershenow v. Enterprise Rent-A-Car Company of Boston,*

8

*Inc.*, 445 Mass. 790, 802 (2006) ("A consumer is not . . . entitled to redress under G.L. c.93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L. c.93A §9, and our earlier case law.")

## CONCLUSION

Based upon the foregoing, CitiMortgage will vigorously defend any action that may be filed against it for its alleged violations of Chapter 93A. CitiMortgage would view it as frivolous should you decide to file a 93A action against it. Upon dismissal of any claim asserted against CitiMortgage, we will seek costs and attorney's fees pursuant to the provisions of General Laws, Chapter 231 §6(f).

Very truly yours,

Nathalie K. Salomon, Esq
Enclosures