UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13593-GAO

CITIBANK, N.A. as Trustee for the Benefit of SWDNSI TRUST SERIES 2010-3,
Plaintiff,

v.

RENEE ANNA NAJDA a/k/a RENEE NAJDA, ANDREW NAJDA, and
ANY and ALL OCCUPANTS,
Defendants and Counterclaimants,

v.

CITIBANK, N.A. as Trustee for the Benefit of SWDNSI TRUST SERIES 2010-3,
PENNYMAC, CORP., SPECIALIZED LOAN SERVICING, LLC,
and CITIMORTGAGE, INC.,
Counterclaim Defendants.

OPINION AND ORDER
March 29, 2017

O'TOOLE, D.J.

This Opinion and Order resolves various pending motions, including those concerning the

Najdas' counterclaims against Citibank, N.A., PennyMac, Corp., Specialized Loan Servicing, LLC

("SLS"), and CitiMortgage, Inc. The Najdas' claims are discussed more thoroughly in this Court's

January 13, 2016, Opinion and Order (dkt. no. 89).

After that Order, on motion Christiana Trust, a division of Wilmington Savings Fund

Society, FSB, not in its individual capacity but solely as separate trustee for PMT NPL Financing

2015-1, was substituted as plaintiff for Citibank, N.A. as trustee for the benefit of SWDNSI Trust

Series 2010-3, following a transfer in interest of the Najdas' mortgage (dkt. no. 96). As the result

of a more recent retransfer, Citibank, as trustee of PMT NPL Financing 2015-1 is now again said

to be the holder of the Najda mortgage. The motion to resubstitute Citibank Trustee for Christiana Trust as plaintiff (dkt. no. 161) is therefore GRANTED.[1]

The various motions for leave to file reply briefs (dkt. nos. 181, 188, 193, 194, and 197) are GRANTED. The proposed briefs included with those motions are deemed to have been briefs and were considered by the Court. They do not need to be refiled separately.

This Opinion and Order first addresses SLS's and PennyMac's respective motions for summary judgment, then evaluates the Najdas' second motion to amend their counterclaims, and resolves various discovery related motions.

## I.       Standard of Review for Summary Judgment

"[S]ummary judgment's role is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citation and quotation mark omitted). Summary judgment will be granted if the moving party can show "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Vineberg v. Bissonnette, 548 F.3d 50, 55–56 (1st Cir. 2008). Initially, the burden is on the moving party to point out a lack of dispute or "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In response, the nonmoving party must demonstrate, "through submissions of evidentiary quality, that a trialworthy issue persists." Vineberg, 548 F.3d at 56 (citation omitted). For issues where the nonmoving party will bear the burden of proof at trial, that party must produce "competent evidence" and may not rely on "conclusory allegations, improbable inferences, and unsupported speculation." Id. (citations omitted).

---

[1] The case caption of this Opinion and Order reflects this change.

**II.**    **Specialized Loan Servicing, LLC's Motion for Summary Judgment (dkt. no. 103)**

 A. Mass. Gen. Laws ch. 244, §§ 35A, 35B, 35C[2]

 Massachusetts law has a number of statutes that require notice be given to a borrower prior to foreclosure on their property. Massachusetts General Law Chapter 244, Section 35A required, at the relevant time, that notice of the borrower's right to cure the default on the mortgage loan be given at least 150 days before a loan in default could be accelerated.

 Here, the Najdas' right to cure notice, sent by SLS as the servicer of the loan, stated that the letter was on behalf of "Citibank, N.A., as trustee for the benefit of SWDNSI Trust Series 2010-3." (Countercl. Pls.' Statement of Facts for Their Opp'n to SLS's Mot. for Summ. J., Ex. RR at 3 (dkt. no. 183-44).) This letter was sent on May 7, 2013. (Id.) As discussed in the January 13, 2016, Opinion and Order, Citibank did not hold the mortgage in 2013; PennyMac held the mortgage until it executed the assignment to Citibank in June 2014. Thus, the Najdas argue, this inaccuracy renders the § 35A letter deficient.

 The error was merely technical; SLS was the mortgage servicer, and the notice provided its contact information for any inquiry or response. The Najdas certainly do not dispute the fact that they were then in default under the note and mortgage. Section 35A's purpose is to "provide the mortgagor with the information necessary to contact the party who holds all relevant information about the loan." Haskins v. Deutsche Bank Nat'l Trust Co., 19 N.E.3d 455, 462 (Mass. App. Ct. 2014). "In the circumstances of loans such as the one here, that party is the mortgage servicer." Id. Because the notice provided the Najdas with the relevant information concerning

---

[2] SLS argues that the Najdas do not have standing to adjudicate the adequacy of the foreclosure notices against SLS because SLS is no longer the servicer of the loan. The issue remains relevant to the plaintiff—represented by the same counsel as SLS—who is trying to foreclose on the Najdas' property. The issues have been fully briefed by both sides on the merits, and the Najdas have standing to challenge these notices against the plaintiff and mortgagee.

their rights and their servicer, it substantially complied with § 35A; no new § 35A letter need be issued. See id. at 462–63 (dismissing challenge to § 35A notice that misidentified mortgagee but identified mortgage servicer). The misidentification of the current holder of the mortgage by the servicer was substantively harmless. Moreover, the remedy for any misinformation would be the reissuance of a new notice and the commencement of a new time period during which the borrower could cure the default. U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 890 (Mass. 2014) (Gants, J., concurring).

Section 35B provides borrowers with some rights to seek a mortgage modification and receive from their creditor information about this process. The Najdas requested a modification (as the Section 35B notice advised them they could) but allege that SLS never responded to their completed modification application. SLS responds, with record evidence, that the Najdas' application was incomplete for failure to include necessary financial information. (See, e.g., Aff. of Cynthia Wallace, Exs. 5–11 (dkt. no. 106-1).) The Najdas have not supported their contention that their application was complete with any evidence. Indeed, their correspondence with SLS during the relevant time period demonstrates their failure to furnish the financial information requested to make the request for modification complete.

Section 35C states, among other things, that "[a] creditor violates this chapter if the creditor makes statements to a state or federal court related to foreclosure or compliance with this chapter, orally or in writing, that it knows or should know are false." Mass. Gen. Laws ch. 244, § 35C(d). The only argument the Najdas make with any support in the record is that SLS, in its statement of facts in support of its motion for summary judgment, repeated the error made in the Section 35A letter by stating that Citibank held the mortgage and note on May 7, 2013. (See SLS's Statement of Undisputed Material Facts ¶ 17 (dkt. no. 107).) As discussed above, Citibank did not hold the

mortgage at the time. However, this statement appears to be an unintentional oversight in a case with voluminous filings. It is likely that someone reconstructing the course of events took the May 7 letter at face value without fact-checking it against the actual chain of title and repeated the error. Nothing is shown to support a finding that the statement of facts was known to be false. Nor did the error itself work any substantial harm to the Najdas or the course of litigation.

For these reasons, summary judgment in favor of SLS is appropriate under Count I. See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) ("[T]he nonmoving party . . . must oppose the motion [for summary judgment] by presenting facts that show that there is a genuine issue for trial." (citation and internal quotation mark omitted)).

B.     Fair Debt Collection Practices Act

SLS began servicing the Najda loan on April 1, 2011. (See Aff. of Cynthia Wallace, ¶ 5 (dkt. no. 106).) The first default appears to have occurred later that year with the omission of the August 2011 payment. (Id., Ex. 1 at 1 (indicating first default was as of "8/1/2011") (dkt. no. 106-1).)

A loan servicer that was servicing the loan before it went into default is not considered a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA") with respect to such loan. 15 U.S.C. § 1692a(6)(F)(iii); see also In re JPMorgan Chase Mortg. Modification Litig., 880 F. Supp. 2d 220, 243 (D. Mass. 2012); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 14 (D. Mass. 2004). Because SLS began servicing the Najda loan before it went into default, SLS is not within the scope of the FDCPA's regulation of debt collectors, and the Najdas' claims under that statute lack merit.

C.      Real Estate Settlement Procedures Act

The Najdas mailed SLS a number of letters purporting to be "Qualified Written Requests" as that term is defined in the Real Estate Settlement Procedures Act ("RESPA"), see 12 U.S.C. § 2605(e). RESPA requires that a loan servicer acknowledge receipt of a Qualified Written Request ("QWR") within five business days, and then investigate and substantively respond to the borrower within thirty business days. See id. If the servicer violates this provision, the statute allows for a borrower to sue for actual damages and, in the case of "a pattern or practice of noncompliance," to sue for statutory damages up to $2,000. Id. § 2605(f).

The Najdas claim that they never received proper responses to several of their letters. Specifically, those letters are: a December 26, 2013, letter (Countercl. Pls.' Statement of Facts for Their Opp'n to SLS's Mot. for Summ. J., Ex. CC (dkt. no. 183-29)), a January 20, 2014, letter (id., Ex. EE (dkt. no. 183-31)); a February 24, 2014, letter (id., Ex. GG (dkt. no. 183-33)); and an April 1, 2014, letter (id., Ex. II (dkt. no. 183-35)). The receipt of each of these letters was promptly acknowledged by SLS or its counsel, but the Najdas contend the letters were not substantively responded to as required under RESPA.

Three more letters are involved in the Najdas' RESPA claim: a June 9, 2014, letter (id., Ex. KK (dkt. no. 183-37)), a July 5, 2014 letter (Aff. of Cynthia Wallace, Ex. 13), and a July 22, 2014, letter (Countercl. Pls.' Statement of Facts for Their Opp'n to SLS's Mot. for Summ. J., Ex. AAA (dkt. no. 183-53)). SLS substantively responded to the June 9 and July 5 letters, though the Najdas dispute the adequacy of the response. The July 22 letter, unlike the previous letters, begins by describing itself as merely a "reply," but then on the sixth and final page, states that it is a "Qualified Written Request."

SLS disputes whether these letters truly are QWRs within the meaning of the statute. Section 2506 defines a qualified written request as one "for information relating to the servicing of such loan," 12 U.S.C. § 2605(e)(1)(A), and defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

Id. § 2605(i)(3).

The Najdas' letters characterized as QWRs read more like Federal Rule of Civil Procedure 34 requests for production of documents. For example, the June 9, 2014, letter sets out eight enumerated requests, some beginning with phrases like, "all documents concerning . . . ," "all portfolio performance data . . . ," and "all loan activity reports . . . ." (Countercl. Pls.' Statement of Facts for Their Opp'n to SLS's Mot. for Summ. J., Ex. KK.) The regulations to the statute make clear that when a servicer determines that borrower correspondence is not a "Qualified Written Request," the servicer should respond justifying its position that that is so. See 12 C.F.R. § 1024.36(f)(2). One letter in the record, dated July 17, 2014 and sent to the Najdas, is an example of such a response. (Aff. of Counsel in Supp. of SLS's Mot. for Summ. J., Ex. F (dkt. no. 105-1).)

In any event, the Najdas have failed to offer admissible evidence tending to show that they suffered any actual damages from any failure to respond adequately to a genuine QWR. See Bulmer v. MidFirst Bank, FSA, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) (granting summary judgment in favor of defendant servicer for failure to show actual damages under RESPA). In support of their RESPA claim, the Najdas only make conclusory allegations that SLS's failure to respond led to fees and overcharges, but they have not produced evidence that supports the conclusion. That failure to produce evidence on a necessary element of their claim warrants summary judgment in favor of SLS. See Celotex, 477 U.S. at 322–23 (1986).

Statutory damages may also be awarded even in the absence of actual damages if a claimant can show that the failure to respond to a QWR was part of a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). Though the Najdas' counterclaim alleges entitlement to statutory damages, (see Am. Countercl. ¶ 144 (dkt. no. 45)), the letters that are in the record, rather than showing a pattern of noncompliance, instead suggest a pattern of extended correspondence between the Najdas and SLS or its representatives.

Summary judgment in favor of SLS is appropriate on this count.

D.      Chapter 93A

Many of the arguments made by the Najdas in their briefs regarding the counterclaim count alleging a violation of Chapter 93A of the Massachusetts General Laws were either not pled or have nothing to do with SLS. For example, what the Najdas refer to as the "2010 Foreclosure" was a servicemember action brought by CitiMortgage, not SLS, and the Najdas only allege that CitiMortgage, not SLS, promised to close it.

The Najdas' contention about SLS's report of their delinquency to credit bureaus includes no allegation that the information reported was inaccurate. Nor does their argument concerning incorrectly-labelled late payments have any evidentiary backing. These flaws are fatal at the summary judgment stage.

Finally, the Najdas argue that being sent slightly different versions of their note was itself an unfair and deceptive practice. Beyond failing to show how these communications specifically caused injury to the Najdas, they fail to show how these communications rise to the level of "immoral, unethical, oppressive, or unscrupulous" necessary to state a Chapter 93A claim. See Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). The underlying note is identical in all of the versions in the record, and all of the versions but one

include an allonge purporting to make the note bearer paper. The other includes no allonge. No evidence has been proffered that the Najdas were injured by the fact of variance in the allonges attached to the note, which had no variance.

## III.    PennyMac, Corp.'s Motion for Summary Judgment (dkt. no. 117)

One very limited claim remains against PennyMac: a claim for a declaratory judgment as to whether PennyMac currently holds the note. Determining who owns the note is relevant to determining who has authority to foreclose on the Najdas' property. See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012) (requiring foreclosing mortgagee to hold the note or act on behalf of the note holder). This question is narrow, and therefore, the focus of the summary judgment analysis is narrow.

While the record evidence on the path of the ownership of the note is not entirely clear, the Najdas have not produced any evidence that PennyMac *currently* possesses it. The Najdas' motion papers include what they claim are several versions of the note (all sent to them by parties other than PennyMac). (See Countercl. Pls.' Statement of Facts for Their Opp'n to PennyMac's Mot. for Summ. J., Exs. A, L, P, Q (dkt. nos. 176-1, 176-12, 176-16, 176-17).) As discussed above, the body of the note is the same in all of them; the difference is in the allonges included. The face of the note states that the lender entitled to receive payments is CitiMortgage. All versions but one include an allonge signed in blank by CitiMortgage. The other includes no allonge. Under Massachusetts law, a note endorsed in blank is bearer paper, payable to whoever physically possesses it. See Mass. Gen. Laws ch. 106, § 3-205(b); see also Khalsa v. Sovereign Bank, N.A., 44 N.E.3d 863, 864 (Mass. App. Ct. 2016). It appears uncontradicted on the record that PennyMac does not have possession of the note. The Najdas have produced no contrary evidence.

Summary judgment will enter in favor of PennyMac on this count.

**IV.**     **Motion to Amend the Counterclaims (dkt. no. 170)**

While the summary judgment motions were pending, the Najdas moved for leave to amend their counterclaims. The proposed amended counterclaims introduce new parties to existing claims. The proposed amendment also would add new claims under Massachusetts regulations, allegations that SLS overcharged the Najdas in servicing the loan, and allegations of a kickback scheme involving forced-placed insurance.

The original deadline for filing amended pleadings was set as January 1, 2016 at the initial scheduling conference (dkt. no. 68). Fact discovery was to close on May 15, 2016. This Court issued its ruling on the motions to dismiss on January 13, 2016 (dkt. no. 89). At a status conference on February 8, the Court left in place the fact discovery deadline (dkt. no. 97). On February 12, the plaintiff filed an amended complaint, substituting the new holder of the mortgage, and adding a junior mortgage as a defendant party-in-interest, but otherwise leaving the substance of its claims unchanged (dkt. no. 98). On April 29, the Najdas requested an extension of time until June 6, 2016 to respond to the amended complaint (dkt. no. 124), which was granted (dkt. no. 145). On June 6, the Najdas filed a motion to dismiss (dkt. no. 150) directed at Christiana Trust, the new plaintiff, but did not file an amended answer or counterclaims. On June 16, the Court denied the motion to dismiss and set June 30 as the deadline for the defendants to file an answer to the amended complaint (dkt. no. 157). The defendants then moved for reconsideration of the Court's denial of their motion to dismiss (dkt. no. 158), and also moved to stay the deadline for filing an answer to the amended complaint (dkt. no. 160). The plaintiff opposed both motions (dkt. nos. 163, 164) and the Court denied them on July 5 (dkt. no. 165). The Court ordered that an answer to the amended complaint be filed "forthwith." (Id.) The Najdas asked for a brief extension to July 11 (dkt. no. 166), which the Court granted (dkt. no. 167). The Najdas did not file an answer on July 11, but

rather on July 12 filed their motion for leave to file a second amended counterclaim, expanding their claims (dkt. no. 170). Also on July 12, the plaintiff moved for a default against the Najdas for failure to file an answer by July 11, as ordered (dkt. no. 169).

The latter two motions are both DENIED. As to the motion to amend: By adding new claims and new parties at this late stage in the case, after the conclusion of discovery and the filing of summary judgment motions, the proposed amended counterclaims would significantly alter and expand the scope of the litigation. If there were some plausible hint that allowing the amendment would be necessary to assure a just result in this litigation, it might be indulged, but there is not. Rather, the proposed expansion of claims looks more like an attempt to stave off an actual adjudication of this case. Additionally, the request comes too late. The Najdas were granted extensions twice. Although the Najdas are proceeding *pro se*, the record of this case shows that they are far from unsophisticated, and they are not permitted to grant themselves a further deadline extension, even for one day.

The pleading muddle is not all on one side. On June 28, 2016, the then plaintiff, Christiana Trust, so recently added, moved to have Citibank Trustee substituted as plaintiff (dkt. no. 161), thus restoring the party lineup to the status quo that existed before the amendment of the complaint that raised the occasion for an amended answer. That motion has now been formally granted (see above). As a result, the complaint is in the form it took when the defendants' answer and amended counterclaims were filed. (See dkt. no. 45.) That answer and those counterclaims respond to the complaint as it presently stands, and no further pleading from the defendants is necessary to respond to it. Accordingly, the motion for default is denied.

**V.**      **Other Motions**

There are a number of motions directed at discovery issues that remain unresolved. They are docket numbers 110, 113, 121, 122, 127, 130, 131, 136, 144, 152, 195, and 200. They are all now DENIED.

**VI.**     **Conclusion**

SLS's Motion for Summary Judgment (dkt. no. 103) is GRANTED. PennyMac's Motion for Summary Judgment (dkt. no. 117) is GRANTED.

The Clerk will schedule a status conference at which the parties should be prepared to discuss the trial of this case.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
