# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EMIGRANT MORTGAGE COMPANY, INC.,   )
                                   )
                Plaintiff,         )
                                   )
                                   )        Civil Action
        v.                         )        No. 16-11136-MLW
                                   )
LINDA PINTI and LESLEY PHILLIPS,   )
                                   )
                Defendants.        )
                                   )

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

RULING

January 11, 2019

John J. Moakley United States Courthouse
Courtroom No. 10
One Courthouse Way
Boston, Massachusetts 02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 5200
Boston, Massachusetts 02210
mortellite@gmail.com

```
1    APPEARANCES:
     Counsel for Plaintiff:
2    John Doonan
     Brian Linehan
3    Doonan, Graves, Longoria, LLC
     100 Cummings Center
4    Suite 225D
     Beverly, MA 01915
5    978-921-2670
     bl@dgandl.com
6
     Counsel for Defendants:
7    Michael Dlott
     166 Quincy Shore Drive
8    Quincy, MA 02171
     781-389-3589
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            COURTROOM DEPUTY CLERK:  Court is now in session.  You
 3    may be seated.
 4            THE COURT:  Good morning.  Would counsel please
 5    identify themselves for the record.
 6            MR. DOONAN:  John Doonan, Your Honor.  Emigrant
 7    Mortgage Company.
 8            MR. LINEHAN:  Good morning, Your Honor.  Brian Linehan
 9    for Emigrant Mortgage Company.
10            MR. DLOTT:  Good morning, Your Honor.  Michael Dlott
11    for the defendants.
12            THE COURT:  Okay.  The defendants are present and I
13    understand they were here on time today.  There is also -- who
14    is the representative of Emigrant who has been here?
15            MR. DOONAN:  Mr. Marcano.
16            THE COURT:  Mr. Marcano, okay.
17            I've been deeply immersed in this case and conducted
18    the trial on January 9, 2019, two days ago.  I've thought
19    deeply about this.  I'm going to give you my decision orally.
20    Although it's being delivered orally, it has not been reached
21    casually, the transcript will be the record of the decision.  I
22    won't alter the transcript unless there's some error in it.
23    However, I may convert the transcript into a more formal
24    memorandum and order.
25            It's going to take me some time to explain my findings
```

1    of fact and conclusions of law.  To alleviate any anxiety or

2    suspense, I'll tell you I've concluded that the plaintiff,

3    Emigrant Mortgage Company, Inc., EMC, lacks standing, therefore

4    this case must be dismissed.

5         This is a foreclosure case in which the plaintiff,

6    Emigrant Mortgage Company, Inc., which I'll refer to as EMC,

7    seeks to evict defendant mortgagors, Linda Pinti and Lesley

8    Phillips, from a condominium at 1643 Cambridge Street, unit

9    number 52 in Cambridge, Massachusetts.

10        The defendants borrowed money in 2008 to acquire the

11   condominium and provided EMC a mortgage and note to secure the

12   loan.  The defendant stopped making any loan payments in 2009.

13   EMC has been attempting to foreclose on their home ever since.

14   EMC filed this suit against the defendants in Federal Court

15   based on diversity jurisdiction on June 17, 2016.  EMC asserts

16   that it is now the rightful owner of the property by virtue of

17   foreclosure by entry.  The foreclosure by entry statute, Mass.

18   General Laws Chapter 244, section 1, provides that a

19   "mortgagee," may recover possession of the mortgage property if

20   it satisfies certain requirements.  The defendants assert that

21   EMC was not the mortgagee on August 9, 2012 when foreclosure by

22   entry was attempted and therefore lacks standing to bring this

23   case.

24        In August 2018, I denied a motion for summary judgment

25   on this issue because there were genuine material facts in

1  dispute.  The parties waived their right to a jury trial on

2  this issue.  A bench trial was conducted on January 9, 2019.

3  EMC presented two witnesses, Edmund Tang and Filippo Ruggiero.

4  Each is an employee of EMC.  For reasons that I will describe

5  in detail, I find that EMC was not, in August 2012, the

6  mortgagee of the Pinti loan because the Pinti mortgage, as I'll

7  refer to it -- the Pinti note, as I'll refer to it, had been

8  previously assigned to ESB-MH Holdings, LLC, which I will refer

9  to as ESB-MH, therefore EMC does not have the personal stake in

10  the outcome of this case necessary to make it an actual case or

11  controversy, which the United States Constitution requires to

12  create federal jurisdiction.  That's found in Article III of

13  the Constitution section 2, clause 1 and discussed in Baker v.

14  Carr, 369 U.S. 186 at 204.  Accordingly, this case is being

15  dismissed.

16      The following facts have been proven by a

17  preponderance of the direct and circumstantial evidence

18  presented at trial.  EMC is a citizen of New York.  It is in

19  the business of originating and servicing mortgage loans.  EMC

20  is a subsidiary of Emigrant Savings Bank.  As Tang and Ruggiero

21  testified, at least since 2008 it has been the practice of EMC

22  to sell loans it originates to other subsidiaries of Emigrant

23  Savings Bank, to assign the mortgage and promissory note to the

24  purchaser and then to service the loan for the purchaser.  The

25  purchaser of the loan, according to Tang and Ruggiero's

1   understanding, owns the loan and is entitled to receive the

2   principal and interest payments on the loan.  ESB-MH has at

3   least since 2009 been one of the subsidiaries of Emigrant

4   Savings Bank which purchases loans from EMC and contracts with

5   EMC to service those loans.

6          Linda Pinti and Lesley Phillips are each citizens of

7   Massachusetts, therefore this court -- or therefore this case

8   was properly brought in this Federal Court by virtue of

9   diversity jurisdiction pursuant to 28 United States Code

10  section 1332(a)(1).

11         On March 13, 2008, EMC lent Pinti and Phillips

12  $160,000 to buy the condominium at 1643 Cambridge Street.  In

13  return, in consideration for the loan, on March 13, 2008, Pinti

14  and Phillips executed a note promising to pay EMC $160,000 on

15  certain terms and provided a mortgage on the condominium to

16  secure the loan.  Those were Exhibits 1 and 4 at trial.

17         On March 12, 2008, EMC executed an assignment of the

18  Pinti mortgage to an entity called EMC-LLC.  That's Exhibit 5.

19  As EMC later recognized and as the parties agreed in court on

20  January 10, 2019, this assignment was invalid because it was

21  purportedly made one day before the mortgage was created.  On

22  November 30, 2009, EMC executed an assignment of the Pinti

23  mortgage to ESB.  That is Exhibit 6.  In an allonge to the

24  note, EMC assigned the Pinti note to ESB-MH on the same date.

25  That's Exhibit 1.  As I said, this was also done on or about

1    November 30, 2009.

2        Again, as Tang and Ruggiero testified, these documents

3    were intended to effectuate assignments from EMC to ESB-MH,

4    that is to transfer the mortgage from EMC to ESB-MH.  On

5    November 30, 2009, EMC and ESB-MH had offices or space in the

6    same building in New York City.  The assignment of the Pinti

7    mortgage and note were not physically delivered by EMC to any

8    individual acting for ESB-MH.  Rather EMC as servicer of the

9    loan -- well, servicer of ESB-MH loans pursuant to an April 23,

10   2008 -- I think -- agreement, that is part of Exhibit 4, placed

11   the documents in the Pinti loan file in EMC's vault.

12       However, as Tang and Ruggiero also testified, as of

13   November 30, 2009, ESB-MH owned the loan, including the

14   mortgage.  ESB-MH was entitled to receive the principal and

15   interest on the loan.  ESB-MH could have taken the file from

16   the assignments -- I'm sorry -- taken the Pinti file with the

17   assignments from EMC.  ESB-MH could also have designated an

18   entity other than EMC to act on its behalf concerning the loan.

19   Among other things, ESB-MH could have assigned the mortgage and

20   the note to another entity.

21       In 2009, there was a project to prepare assignments of

22   mortgages held by Emigrant Savings Bank subsidiaries to the

23   Federal Home Loan Bank Board if additional security being

24   considered was actually required by the Federal Home Loan Bank

25   Board of New York.  As part of this, ESB-MH prepared to assign

1    the Pinti mortgage and note and many other mortgages and notes

2    to the Federal Home Loan Bank Board of New York.  ESB-MH signed

3    an allonge to the Pinti note making an assignment in blank,

4    which would have been filled in with the name of the Federal

5    Home Loan Bank Board of New York if the Federal Home Loan Bank

6    Board of New York had required an assignment.  Ultimately, it

7    did not.

8           The assignment of the Pinti mortgage to ESB-MH was not

9    recorded.  ESB-MH had the authority to record the mortgage.

10   However, not recording an assigned mortgage made it simpler to

11   reassign it if necessary, among other things.  ESB-MH never

12   reassigned the Pinti mortgage to EMC.

13          The defendants did not make the required August 1,

14   2009 mortgage payment.  On September 29, 2009, EMC sent them a

15   notice of default and of their right to cure the default within

16   90 days.  The defendants did not cure the default.  EMC sent

17   defendants a February 5, 2010 letter accelerating all sums due

18   under the note.  The defendants have not made any payment on

19   the note since July 2009.

20          On June 30, 2011, Pinti sent EMC a Qualified Written

21   Request, sometimes called a QWR, seeking information about the

22   mortgage loan.  The QWR requested the identities of the owner

23   of the loan and the holder of the mortgage.  EMC responded to

24   the QWR in a letter dated August 22, 2011, which is Exhibit 4.

25   In the letter, EMC stated that, "The owner of the loan is

1   ESB-MH Holdings, LLC," and, "The holder and servicer of the

2   loan is Emigrant Mortgage Company, Inc."

3        The response also stated that, "The assignment

4   transferring ownership of the note and mortgage to ESB-MH

5   Holdings, LLC has not been recorded, and the original note and

6   mortgage as well as the assignment are in the possession of

7   Emigrant."  The response attached a copy of the note, the

8   allonge to the note assigning it from EMC to ESB-MH, the

9   mortgage, the 2009 assignment of the mortgage to ESB-MH and the

10  servicing agreement.

11        EMC subsequently attempted a nonjudicial foreclosure

12  of the loan by conducting an auction of the property on August

13  9, 2011 pursuant to the power of sale in the mortgage.  Harold

14  Willion, who is not a party to this case, purchased the

15  property at auction for $260,000.  EMC then provided a

16  discharge of the mortgage to Pinti.  The foreclosure by sale

17  was challenged by Pinti in a case in the courts of the

18  Commonwealth of Massachusetts.

19        On July 17, 2015, the Massachusetts Supreme Judicial

20  Court found that EMC had not satisfied the statutory

21  requirements for notice of a foreclosure pursuant to a power of

22  sale.  That decision is Pinti v. EMC, 33 N.E.3d. 1213.  The

23  foreclosure sale to Willion was deemed void in the Supreme

24  Judicial Court's Pinti decision.

25        On July 29, 2015, Pinti recorded the discharge that

1    she had received from EMC after Willion made his payment.  EMC

2    returned to Willion the $260,000 he had paid for the

3    condominium.

4           In this case EMC alleges that the discharge was

5    provided by mistake and should be struck.  On August 9, 2012,

6    in addition to the auction that resulted in the sale to

7    Willion, EMC also attempted a foreclosure by entry.

8    Foreclosure by entry is a statutory method of foreclosure that

9    is an alternate or alternative to and separate from the

10   statutory power of sale, as the Supreme Judicial Court

11   explained in Ibanez, 941 N.E.2d 40 at 49 note 15, a 2011 case.

12          Pursuant to the foreclosure by entry statute, Mass.

13   General Law Chapters 244, section 1, A "mortgagee" may recover

14   possession of the mortgaged property after a breach of a

15   condition of the mortgage by making, "an open and peaceable

16   entry thereon.  If not opposed by the mortgagor."  After the

17   entry, a memorandum of the entry must be made on the mortgage

18   deed and signed by the mortgagor or person claiming under him

19   or else the mortgagee must record with the registry of deeds a

20   certificate of entry made under oath and signed by two

21   competent witnesses to prove the entry occurred.

22          After recording the certificate of entry, if the

23   mortgagee maintains peaceable possession of the property

24   continuously for three years, the mortgagor's right of

25   redemption is foreclosed forever and the mortgagee becomes the

1    lawful owner of the property.  The three-year statutory period

2    begins to run on the date the certificate of entry is recorded,

3    and the mortgagor's failure to redeem the property within three

4    years extinguishes the mortgagor's claim to the property, as

5    explained in Santiago v. Alba Management, Inc., 928 N.E.2d 359

6    at 363, a 2010 Mass. Appeals Court case.

7            As explained in Santiago, when the right of redemption

8    is foreclosed, the mortgage has done its work and the property

9    is no longer mortgaged land.  Instead, the former mortgagee

10   owns the legal and equitable interests of the property and the

11   mortgage no longer exists.

12           On September 11, 2012, EMC recorded a certificate of

13   entry concerning the Cambridge Street condo.  It stated that

14   two witnesses had, on August 9, 2012, seen an agent of EMC,

15   Michael Harkins, make an open peaceable and unopposed entry on

16   the premises described in the mortgage and that Pinti-Phillips

17   mortgage to EMC was "now held by EMC" and was recorded.  That's

18   Exhibit 10.  The power of attorney authorizing Harkins to make

19   entry on the Cambridge Street property and to file the

20   certificate of entry was provided by EMC and stated that EMC

21   "holds" the mortgage.

22           On June 17, 2016, EMC filed this suit against Pinti

23   and Phillips alleging, among other things, that it is the

24   rightful owner of the Cambridge Street condominium by virtue of

25   an effective foreclosure by entry on August 9, 2012.

1   Defendants assert, among other things, that EMC was not the

2   mortgagee on August 9, 2012 because the mortgage had been

3   assigned to ESB-MH.  After trial on January 9, 2019, I conclude

4   that this contention is correct.

5           As I will explain in the following conclusions of law,

6   EMC lacks standing with regard to the foreclosure by entry

7   claim in this case, therefore the case is being dismissed.

8           With regard to the conclusions of law, as indicated

9   earlier, an actual justiciable case or controversy in which a

10  Federal Court has jurisdiction exists only if a plaintiff has a

11  personal stake in the outcome of the case and therefore has

12  standing to bring it.  Baker v. Carr, 369 U.S. 186 at 204 is

13  one case standing for that proposition.

14          The plaintiff has the burden of proving standing, as

15  the Supreme Court explained in Lujan, 504 U.S. 555 at 561.  In

16  this case, to prove standing, EMC must prove that on August 9,

17  2012, it was the "holder" of the Pinti mortgage and therefore

18  the "mortgagee."  Mass. General Laws Chapter 244, section 1

19  provides that a mortgagee may recover property by entry and

20  continued possession.  The Supreme Judicial Court has held that

21  in order to foreclose on a mortgage by entry, an entity must

22  have been the mortgagee at the time of entry.  That's Bailey,

23  951 N.E. 2d 331 at 334 note 10, citing Ibanez, 941 N.E.2d at 49

24  note 15.

25          On June 22, 2012, in Eaton, 969 N.E. 2d 1118 at 1121,

1      the Supreme Judicial Court interpreted the term "mortgagee" in

2      Mass. General Laws Chapter 244, section 14 regarding

3      foreclosure by sale.  It interpreted mortgagee to mean, "the

4      person or entity then holding the mortgage and also either

5      holding the mortgage note or acting on behalf of the note

6      holder."  That's at page 1121.

7           As the SJC also wrote in Eaton at page 1129, "Where

8      the legislature uses the same words in several sections which

9      concern the same subject matter, the words must be presumed to

10     have been used with the same meaning in each section."

11     Therefore, I conclude that the term "mortgagee" has the same

12     meaning in Chapter 244, section 1, concerning foreclosure by

13     entry that the SJC found it had in Chapter 244, section 14

14     concerning foreclosure by sale.

15          In Eaton, the Supreme Judicial Court wrote that the

16     "term 'note holder' is used to refer to a person or entity

17     owning the mortgage note."  That's at 1121 note 2.

18     Accordingly, I conclude that the person or entity that owns the

19     mortgage is the holder of the mortgage for the purpose of

20     determining who is the mortgagee under Chapter 244, section 1.

21     I find that at the time of the closing in 2008, that is the

22     closing of the loan to Pinti and Phillips, EMC was the owner

23     and therefore the holder of the Pinti mortgage and the Pinti

24     note.  However, on November 30, 2009, EMC assigned both the

25     Pinti note and the Pinti mortgage to ESB-MH, which then became

1    the owner and holder of the mortgage and of the note.

2           More specifically, on November 30, 2009, EMC executed

3    the assignment of mortgage to ESB-MH.  That is both Exhibit 3

4    and Exhibit 7 in this case.  On the same date, it executed the

5    allonge to the Pinti note that is part of Exhibit 1 making the

6    note payable to ESB-MH.  The 2009 assignment of the mortgage

7    was not recorded.  EMC argues that the assignment was therefore

8    legally ineffective, and EMC continued to own the mortgage.

9           This contention is incorrect.  The fact that an

10   assignment is not recorded does not render it ineffective for

11   the purpose of granting the ability to foreclose.  ESB-MH

12   Holdings obtained ownership of the mortgage when the assignment

13   was executed and delivered, as I'll explain, even though it was

14   not recorded.

15          As the Supreme Judicial Court held in Lamson v.

16   Abrams, 25 N.E. 2d 374 at 376, an assignment of a mortgage need

17   not be recorded in order to transfer ownership.  Other cases

18   consistent with this are Ibanez, 941 N.E. 2d at 53-55 and In re

19   Schwartz, 366 B.R. at 269.

20          In Lamson, the loan company assigned the mortgage to a

21   corporation but did not record the assignment.  The SJC held

22   that nevertheless, "The corporation was the actual holder of

23   the mortgage on June 28, 1938 when the loan company entered

24   upon the premises and filed the certificate of entry."

25   Therefore, the SJC found the loan company had no authority to

1    take possession under the mortgage.  That's found at 25 N.E.2d

2    at 376-77.  However, while the execution of the assignment of

3    the mortgage from EMC to ESB-MH on November 30, 2009 is

4    evidence of such an assignment, it is not alone sufficient to

5    prove assignment was made.

6            To be effective in transferring a mortgage, an

7    assignment must, one, be delivered to the assignee; and two,

8    with the intent to transfer the mortgage.  That's derived from

9    Sullivan, 22 N.E.2d 43 at 46 and Shurtleff, 118 Mass. 154 at

10   155.

11           As the SJC has also written, "the factors essential to

12   delivery are that the grantor intended . . . to effect a

13   present transfer of the property, and that the grantee by his

14   conduct assent to the conveyance."  That's Frankowich, 71

15   N.E.2d 761, 762.  This is "ordinarily a question of fact."

16   Accordingly, in determining whether the delivery has occurred,

17   Massachusetts courts have focused on whether the purported

18   assignor and assignee treat the assignment as delivered.  They

19   look to the "acts of the grantee . . . coupled with a purpose

20   of the grantor to treat the note as delivered . . ."  That's

21   Sullivan, 22 N.E.2d at 46.

22           In this case, it is undisputed that the assignment

23   from EMC to ESB-MH was not manually delivered.  However, as the

24   SJC has also written, "it is settled that manual delivery of

25   the instrument is not required to work a transfer."  That

1  statement is in <u>Creeden</u>, 79 N.E. 776, 777.

2       As the EMC employees Tang and Ruggiero testified and

3  as I find, the November 30, 2009 assignment of the mortgage,

4  Pinti mortgage, from EMC to ESB-MH was intended to effectuate

5  transfer of the Pinti mortgage from EMC to ESB-MH.  The allonge

6  created in conjunction with the assignment of the mortgage,

7  that is the allonge to the note, created in conjunction with

8  the assignment of the mortgage is further evidence that EMC

9  intended to transfer the mortgage to ESB-MH.  The allonge makes

10  the Pinti note payable to ESB-MH.

11       Tang and Ruggiero believe that after November 30,

12  2009, ESB-MH owned the mortgage and was entitled to payments of

13  interest and principal made pursuant to the note.  In addition,

14  as Tang testified, ESB-MH could have physically taken the

15  assignment of the mortgage from EMC's files and recorded it.

16  EMC manifested its understanding that ESB-MH owned the mortgage

17  by writing to Pinti on August 22, 2011, that, "The owner of the

18  loan is ESB-MH Holdings, LLC."  That's in Exhibit 4.

19       ESB-MH also acted as if it owned the Pinti mortgage

20  and Pinti note.  When it was expected that the Federal Home

21  Loan Bank Board of New York would require assignment to it of

22  the Pinti loan and many others, it was ESB-MH that was

23  identified as the assignor of the assignment of mortgage,

24  Exhibit 9, that was prepared and executed but never delivered

25  to the Federal Home Loan Bank Board of New York.

1          It was also ESB-MH that executed in blank the allonge

2     to the Pinti note with the intention that it later would be

3     made payable to the Federal Home Loan Bank Board of New York if

4     it became necessary to assign the Pinti mortgage to it.  That's

5     in Exhibit 1.

6          Tang and Ruggiero also credibly testified that after

7     the assignments, ESB-MH was entitled to receive the principal

8     and interest payments on the Pinti note.  I infer that ESB-MH

9     did receive those payments.  Although not material to my

10    analysis, EMC has not shown that those payments were not

11    recorded on ESB-MH's books or that, if there were tax

12    consequences to such payments, that ESB-MH didn't represent to

13    the relevant tax authorities that it owned the mortgages and

14    associated notes.  I assume that ESB-MH did record the payments

15    from Pinti on its books and did pay any necessary taxes on

16    them.  Although, as I say, those facts that I infer from the

17    circumstantial evidence are not material to my conclusion.

18         Basically I conclude that the Pinti mortgage was

19    assigned to ESB-MH in 2009 and it was, in 2012, the mortgagee.

20    A case factually analogous and instructive is Sullivan, 22

21    N.E.2d 43, 45-46.  Accordingly, ESB-MH was the mortgagee on

22    August 9, 2012.  EMC was not the proper entity to attempt to

23    foreclose by entry.  EMC lacks standing to litigate the claim

24    for foreclosure by entry.

25         As the defendants have been living in the Cambridge

1    Street condominium since 2009 without making any mortgage

2    payments, I've considered whether to allow an amendment to the

3    complaint to permit ESB-MH, which was the mortgagee on August

4    9, 2012, to replace EMC as the plaintiff in this case.

5    However, I concluded that any such amendment would be futile.

6            Chapter 244, section 1 authorizes a mortgagee to

7    foreclose by entry.  In this case the foreclosure by entry was

8    attempted by EMC in its own name, as I explained earlier.

9    Therefore, ESB-MH could not allege facts on which relief could

10   be granted on a claim of possession -- I'm sorry -- foreclosure

11   by entry.  Essentially because ESB-MH did not attempt to

12   foreclosure by entry in 2012, it was done in the name of EMC,

13   ESB-MH could not allege facts on which relief -- could not

14   allege a claim for possession by entry on which relief could be

15   granted.

16           You know, I note that on June 22, 2012, the Supreme

17   Judicial Court decided Eaton.  It held, as I explained earlier,

18   that section 244 of Chapter 14 regarding entry by sale requires

19   that notice be given by the mortgagee.  It defined the

20   mortgagee as the person or entity then holding the mortgage and

21   also either holding the note or acting on behalf of the note

22   holder.  Its discussion of note holder indicated that the owner

23   of the mortgage would be deemed the holder of the mortgage.  In

24   essence, it indicated that in Chapter 244 "holder" and "owner"

25   are synonymous.

1          In Eaton, the SJC reiterated the principle that the

2     same words and related sections of a statute would be presumed

3     to have the same meaning, thus indicating that the SJC would

4     give the term "mortgagee" in Chapter 244, section 1 the same

5     meaning it gave it for section 14.  Recognizing that there may

6     have been some ambiguity previously, the SJC made the Eaton

7     decision perspective only.  So it applied the conduct only

8     after June 22, 2012.

9          Eaton should have put EMC on notice as of June 22,

10    2012 that its foreclosure practices did not meet the

11    requirements of Massachusetts law.  However, on August 9, 2012,

12    EMC attempted to conduct a foreclosure by entry in a manner

13    that it should have foreseen would be held invalid under

14    Massachusetts law after Eaton.  In its July 15, 2015 decision

15    in Pinti v. EMC, 33 N.E.3d, I think, 1213, the SJC found that

16    EMC did not give Pinti proper notice of the attempted section

17    14 foreclosure by sale.  It also acknowledged that there was a

18    genuine dispute concerning EMC's standing to conduct the

19    foreclosure sale but it did not decide the issue.  That's at

20    page 1227.

21         This could have encouraged EMC to cause ESB-MH to

22    conduct a foreclosure by entry after the SJC decided the Pinti

23    case on July 17, 2015.  If ESB-MH had successfully in its own

24    name as mortgagee foreclosed by entry, it appears that it

25    would -- or attempted to foreclose by entry later in 2015, it

1    appears it would now be entitled to be in possession of the

2    Cambridge Street condominium.

3            It may seem unjust for Pinti and Phillips to be

4    allowed to continue to live in the condominium on Cambridge

5    Street without making any mortgage payments as they have

6    since -- as they have lived without making any mortgage

7    payments since 2009.  However, EMC and EBS-MH are in the

8    mortgage loan business and should be able to comply with

9    Massachusetts law.  To the extent that they are being deprived

10   of payments reasonably expected when the loan was made in 2008,

11   they're suffering an injury inflicted by their own failure to

12   satisfy the requirements of Massachusetts law.

13           In any event, as EMC lacks standing, this case must be

14   dismissed.  It is therefore hereby dismissed.

15           So that concludes this case before me.  I'm ordering

16   the parties to order a copy of the transcript.  As I said, I

17   may convert it into a more formal memorandum and order.

18           Is there anything further for today, or -- is there

19   anything further?

20           MR. DLOTT:  No.  Thank you, Your Honor.

21           MR. DOONAN:  I want to thank Your Honor for your time

22   and your attention to this matter.  The only issue that I would

23   raise, and perhaps Your Honor has addressed it in your order

24   and I missed it, is the subservicing agreement.

25           THE COURT:  I may not have addressed it directly, but

1    I don't believe that the subservicing agreement provided the

2    authority for EMC to act for the mortgagee -- well, I don't

3    think the subservicing agreement alters the analysis here.

4           I believe that Eaton indicates that EMC could have

5    acted for ESB-MH as an agent of the note holder, but the

6    attempted foreclosure by entry had to be made by and in the

7    name of the note holder -- of the mortgage holder itself, and

8    that is ESB-MH.  Okay?

9           MR. DOONAN:  Then may we have the return of the

10   original promissory note, Your Honor?

11          THE COURT:  You can at some point.

12          MR. DOONAN:  Okay.

13          THE COURT:  You haven't had time to reflect on this.

14          MR. DOONAN:  That's true, Your Honor.

15          THE COURT:  Is there a possible -- you should read the

16   transcript and the memorandum.  If there's a possible appeal

17    -- but I don't think -- well, let's see.  There was some

18   question raised about the authenticity of the note with a

19   handwriting expert.  I think -- well, what do the defendants

20   say about the return of the note at this time?

21          MR. DLOTT:  I would like the note to be held by the

22   court.  If they are going to bring an appeal, I would like a

23   chance to have the note that they gave to the court examined by

24   an expert at that point.

25          THE COURT:  Well, I don't know that you can add new

1   facts on appeal.  I excluded the expert, I'll now make that

2   decision final, for the reasons I described on the 9th.

3          I think the court will retain the note for the time

4   being in part -- well, to maintain the record as it is for

5   possible appeal but also to minimize the risk that there will

6   be some allegation that the document was tampered with.  But,

7   you know, there's the possibility, perhaps the likelihood that

8   the mortgagee will continue to attempt to foreclose on the

9   mortgage by sale if that's available or by entry.  And if the

10  original note is needed, particularly if this case is finally

11  concluded because there's no appeal or after appeal, the note

12  will be returned to the plaintiff for possible use in those

13  future proceedings.  Okay?

14         MR. DOONAN:  Thank you, Your Honor.

15         MR. DLOTT:  Thank you, Your Honor.

16         THE COURT:  Court is in recess.

17         (Adjourned, 10:27 a.m.)

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this 13th day of January, 2019.


/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter