UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CITIBANK, N.A., NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY
AS SEPARATE TRUSTEE FOR PMT NPL
FINANCING 2015-1,
      Plaintiff,
v.

RENEE ANNA NAJDA et al.,
      Defendants,
v.

SANTANDER BANK N.A. f/k/a
SOVEREIGN BANK, Party-in-Interest,

Case No. 14-13593-GAO

RENEE ANNA NAJDA et al.,
      Defendants/Counterclaim Plaintiffs,
v.

CITIBANK, N.A., … FOR PMT NPL
FINANCING 2015-1 et al.,
      Plaintiff/Counterclaim Defendants,

**DEFENDANTS' MEMORANDUM ON WHY THERE WAS NEITHER COMPLETE
NOR MINIMAL DIVERSITY WHEN THE ACTION COMMENCED**

I.      **INTRODUCTION**

      Defendants/Counter-Plaintiffs Renee and Andrew Najda (collectively, the "Najdas"),

respond to this Court's order for a memorandum (D. E. No. 473) by stating when this action

1

commenced, the original plaintiff, Citibank No. 1[1], was a passive trustee, without real and substantial control, of SWDNSI 2010[2], an unincorporated entity. Pursuant to *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465-66 (1980), SWDNSI 2010's citizenship controlled for evaluating diversity because the trustee was passive. Pursuant to *Americold Realty Trust v. ConAgra Foods, Inc.*, 577 U.S. 378, 383 (2016), SWDNSI 2010, an unincorporated entity, inherited the citizenship of all its members, including those sharing Massachusetts citizenship with the Najdas. Hence, the original plaintiff had overlapping citizenship with both Najdas. There was neither complete diversity nor minimal diversity at the time this action was commenced.

## II.      HISTORY OF DIVERSITY JURISDICTION

### A.      Constitutional Diversity

Article III, Section 2 of the Constitution provides that "[t]he judicial Power shall extend to," among other things, "Controversies between two or more States;—between a State and Citizens of another State;— between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

The Supreme Court interpreted this clause to mean that federal jurisdiction over disputes, involving exclusively state claims, was authorized under the Constitution "so long as any two adverse parties are not co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967). "'[M]inimal diversity,' [] is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be cocitizens." *Id*. at 530.

---

[1] Citibank, N.A., as Trustee for the Benefit of SWDNSI Trust Series 2010-3 ("Citibank No. 1"). The original plaintiff.
[2] SWDNSI Trust Series 2010-3 ("SWDNSI 2010").

Constitutional diversity, therefore, is satisfied when there is minimal diversity at the time the action is commenced. *Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177, 186 (D. Mass. 2022) ("the Constitution only requires 'minimal diversity'").

### B.   Statutory Diversity

The Judiciary Act of 1789 established the circuit courts and the federal district courts. 1 Stat. 73 (1789). In passing the Act, the First Congress did not, however, vest in the federal courts jurisdiction over disputes involving parties that satisfied minimal diversity as set forth in Article III of the Constitution. Instead, the Judiciary Act of 1789 limited diversity jurisdiction to cases where one of the parties was a citizen of the state where the suit had been brought. Subsequently, when considering the precursor to 28 U.S.C.S. § 1332(a)(1) "[i]n *Strawbridge v. Curtiss*, 3 Cranch 267 (1806), [the Supreme] Court held that the diversity of citizenship statute required 'complete diversity': where co-citizens appeared on both sides of a dispute, jurisdiction was lost." *State Farm*, 386 U.S. at 530-31.

At present, "[u]nder Section 1332(a) … federal courts have diversity jurisdiction over cases between" "Citizens of different States". *Auctus*, 588 F. Supp. 3d at 181; 28 U.S.C.S. § 1332(a)(1). "This statutory grant requires complete diversity between the plaintiffs and defendants in an action." *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008). Statutory diversity, therefore, is satisfied when there is complete diversity at the time the action is commenced.

"The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business. See Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv. L. Rev. 483, 510; *Shamrock Oil Corp. v. Sheets*, 313 U.S.

100, 108-09". *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 18 (1989) (Stevens J. dissenting

opinion) (quoting *Indianapolis v. Chase National Bank*, 314 U.S. 63, 76 (1941)).

In this instance, "[t]he statutory grant of federal jurisdiction in diversity cases" controlled;

the original plaintiff Citibank No. 1 was required to establish complete diversity between itself and

the Najdas. *Picciotto*, 512 F.3d at 17. Citibank No. 1 did not establish complete diversity. Nor was

there minimal diversity; both Najdas had the same citizenship and neither Najda was diverse from

Citibank No. 1.

## III.   ARGUMENT

### A.   The District Court Lacked Subject Matter Jurisdiction at the Start Because Citibank No. 1 Was the Passive Trustee of the Non-Diverse Unincorporated Entity

Neither Citibank No. 2[3] nor the counterclaim defendants (collectively, "Citibank No. 2 et

al.") met their burden of establishing subject matter jurisdiction by a preponderance of the

evidence. Citibank No. 2 et al. did not dispute the evidence that proved the original plaintiff

Citibank No. 1 was a passive trustee, without real and substantial control over SWDNSI 2010.

Citibank No. 2 et al. did not dispute that SWDNSI 2010 was non-diverse. They did not cite any

countervailing evidence in the record. Derelict in meeting their jurisdictional burden, Citibank No.

2 et al. cannot plausibly claim there was diversity. Subject matter jurisdiction was lacking from

the start.

Dismissal is mandated when a passive trustee of a non-diverse unincorporated entity files

an action pursuant to 28 U.S.C. § 1332(a)(1) exclusively because a Court lacks subject matter

jurisdiction at the start. *See* Flowchart 1 on page 5.

---

[3] Citibank, N.A. not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 ("Citibank No. 2"). The third plaintiff after two substitutions.

## Flowchart 1



### 1.   Jurisdiction Must Be Established Without Exception

"The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "[F]ederal courts are courts of limited jurisdiction, and . . . may exercise only the authority granted to them by Congress." *Commonwealth of Mass. v. Andrus*, 594 F.2d 872, 887 (1st Cir. 1979).

### 2.   Existence of Subject Matter Jurisdiction Is Not Presumed

"It is to be presumed that a cause lies outside [of the federal courts'] limited jurisdiction". *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *DMB Fin. LLC v. Symple Lending LLC*, Civil Action No. 21-12065-FDS, 2022 U.S. Dist. LEXIS 200232, at *3 (D. Mass. May 3, 2022) (quoting *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005)) ("Again, '[t]he existence of subject-matter jurisdiction is never presumed.'").

### 3.   Citibank No. 2 et al. Bear the Burden of Establishing Jurisdiction

The "plaintiff who seeks to bring [its] suit in a federal forum [it] bears the burden of establishing that the federal court has subject-matter jurisdiction." *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018) (citation omitted). The Najdas, as respondents to the parties invoking jurisdiction, do not have the burden of proving the lack of subject matter jurisdiction. "[N]otwithstanding the length of litigation or the resources that have been devoted to the matter, '[the Najdas] cannot confer subject matter jurisdiction on a federal court'". *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp.*, LP, 362 F.3d 136, 139 (1st Cir. 2004) (quoting *U.S. v. Horn*, 29 F.3d 754, 768 (1st Cir. 1994)).

4.  **Diversity Jurisdiction Statutes Are Strictly Construed and Doubts Resolved Against Jurisdiction**

"[D]iversity jurisdiction statutes should be strictly construed against federal jurisdiction". *In re Mass. Diet Drug Litigation*, 338 F. Supp.2d 198, 202 (D. Mass. 2004) (and cases cited). Just as "any doubts concerning the Court's jurisdiction should be resolved against removal" so to should doubts be resolved against original diversity jurisdiction. *Peerless Ins. Co. v. Phila. Ins. Co.*, No. 12-906-ML, 2013 U.S. Dist. LEXIS 107256, at *6 (D.R.I. July 31, 2013).

B.  **Under *Navarro*, SWNDSI 2010's Citizenship Controlled Because Citibank No. 1 Was a Passive Trustee**

When a trustee of an unincorporated entity sues, as Citibank No. 1 did, it must be an "active trustee[] whose control over the assets held in [its] name[] is real and substantial" to "invoke the diversity jurisdiction of the federal courts on the basis of [its] citizenship, rather than that of the [unincorporated entity's] shareholders." *Navarro*, 446 U.S. at 458, 465. Indeed, "the touchstone of the test is a review of the [trustee's] legal powers, rights and duties [that] was reaffirmed in *Navarro*". *Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985). Restated, if the trustee is passive, neither "manag[ing] the assets" nor "control[ling] the litigation", the unincorporated entity's citizenship controls. *Navarro*, 446 U.S. at 465.

"*Navarro* certainly did not say that a trustee is the real party in interest as long as it holds title to trust assets. If that were what the Supreme Court had intended, it would have been wholly unnecessary for it to examine … the trustee's powers to invest assets … [or] control litigation strategy". *U.S. Bank Nat'l Ass'n v. Coop. Dist. of Spanish Fort*, No. 11-0401-WS-M, 2011 U.S. Dist. LEXIS 112026, at *14 (S.D. Ala. Sep. 29, 2011).

"[The *Navarro*] rule coexists with [the Supreme Court's] discussion" of unincorporated entities in *Americold*. *Americold*, 577 U.S. at 383. Further, *Americold* did not overrule *Navarro's*

holding that a trustee must have "real and substantial" control over the assets and litigation for the trustee to invoke diversity jurisdiction on the basis of its citizenship instead of the unincorporated entity's. *Navarro*, 446 U.S. at 458, 465.

**C.      Wrong to Conflate the *Navarro* Rule and the Real Party of Interest Standard**

When determining the citizenship of a trustee of an unincorporated entity, citizenship is ascertained applying the *Navarro* rule: whether the trustee has real and substantial control over the assets and litigation. <u>Not</u> determined using the real party in interest standard of Rule 17 (a). "[T]he 'real party in interest' standard of Rule 17 (a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy … serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 463 n. 9.

Though it can be confusing when Courts, applying *Navarro*, describe the *Navarro* rule as determining the "real party in interest for jurisdictional purposes", Courts do not merely interpose Rule 17 (a)'s real party in interest standard to determine the controlling citizenship for evaluating diversity. *Sp. Fort*, 2011 U.S. Dist. LEXIS at *14. Courts examine a trustee's power over the assets and control of the litigation to determine if it or the unincorporated entity's citizenship controls.

*Navarro* did not say that the trustee's citizenship controls in a judicial foreclosure if the trustee merely holds the mortgage and note. "If that were what the Supreme Court had intended, it would have been wholly unnecessary for it to examine … the trustee's powers to invest assets … [or] control litigation strategy". *Id*.

Previously, Citibank No. 2 et al. asserted holding was enough; wrongly conflating the real party of interest with standing to foreclose with the real and substantial powers standard of *Navarro*. "If plaintiff's reading were correct, the Supreme Court could have skipped all of the above discussion and simply decreed that a trustee's title to trust assets is a binary on/off switch

that singlehandedly dictates whether the trustee is a real party in interest [for evaluating diversity jurisdiction]. Navarro did nothing of the sort." *Id*.

**D.    This Memorandum's Application of *Navarro* Is Consistent With Other Circuit Courts**

The Seventh Circuit applied *Navarro* and analyzed a trust document to conclude a trustee had sufficient real powers to be designated active. *Goldstick v. ICM Realty*, 788 F.2d 456, 458 (7th Cir. 1986). Similarly in the foreclosure context, the Fifth Circuit applied *Navarro* and determined that the trust document, already part of the record, outlined sufficient real powers to designate the trustee active. *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 (5th Cir. 2017). The Third Circuit applied *Navarro* and found the trustees had real and substantial powers so their citizenship controlled. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 37 (3d Cir. 2018).

Circuit Courts also distinguish between a trustee of an unincorporated entity and a trustee of a fiduciary relationship, e.g. a traditional trust. *Demarest* discussed determining the controlling citizenship "in cases where … the trustee of a traditional trust [i.e. a fiduciary relationship] is sued" and invoked diversity jurisdiction. *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1231 (9th Cir. 2019). The Ninth Circuit did not opine on what was the controlling citizenship for a trustee of an unincorporated entity invoking diversity jurisdiction. *Demarest* distinguished "fiduciary relationships … from … unincorporated artificial entities". *Demarest*, 920 F.3d at 1229. This distinction is a fork in the road that leads to distinct rules for determining the controlling citizenship. *See* Flowchart 1 on page 5.

**E.    This Memorandum's Application of *Navarro* Is Consistent With Other District Courts**

When the Court found that "Defendants merely recited the *Navarro* standard and failed to provide any evidence of such 'customary powers'" the Court "REMANDED to the 152nd Judicial District Court of Harris County, Texas." *Smith v. Bank of N.Y. Mellon*, No. H-16-1669, 2017 U.S.

Dist. LEXIS 56337, at *2 (S.D. Tex. Jan. 18, 2017). Within the same district in another foreclosure

related case, the Court explained that "the burden is on Defendants to classify the trust, establish

its citizenship, and prove complete diversity." *Pitts v. Bank of N.Y. Mellon*, No. 4:16-CV-01410,

2017 U.S. Dist. LEXIS 49992, at *10 (S.D. Tex. Feb. 14, 2017). The Court then found that

"Defendants have not done so. This failure, coupled with Plaintiffs' assertions, is 'sufficient to cast

doubt on whether this court has subject matter jurisdiction.' … Accordingly, this Court must

remand." *Id*. (citations omitted).

Elsewhere the Court "dismissed for lack of subject matter jurisdiction" after the Court had

found "this Delaware statutory trust seems precisely like the type considered by the Supreme Court

in Americold, and U.S. Bank has failed to demonstrate that it is a real party to the controversy that

can proceed in its own right and without reference to the citizenship of the trust's beneficiaries".

*U.S. Bank Tr., N.A. v. Dupre*, No. 6:15-CV-0558 (LEK/TWD), 2016 U.S. Dist. LEXIS 127848, at

*12 (N.D.N.Y. Sep. 20, 2016). In a different district within the Second Circuit, the Court

determined that "Plaintiff ha[d] also not established citizenship of the trust, nor that the trustee was

a 'real and substantial' party … such that it's citizenship could be used to establish subject matter

jurisdiction". *Wilmington Sav. Fund Soc'y, FSB v. Thomson*, No. 18-cv-3107 (NSR), 2019 U.S.

Dist. LEXIS 106184, at *6-7 (S.D.N.Y. June 25, 2019). In so concluding, the Court granted the

"motion to dismiss … pursuant to Fed. R. Civ. P. § 12(b)(1)." *Id*. at *8.

    **F.**    **Citibank No. 2 Previously Cited a Decision From This District That Misquoted**
            ***Navarro*, Altering *Navarro's* Holding**

To justify its result, the *Dedoming* Court misquoted *Navarro* by omitting the five (5) words

"trustees who meet this standard" immediately preceding "[can] sue in their own right, without

regard to the citizenship of the trust beneficiaries." *U.S. Bank Trust, N.A. v. Dedoming*, 308 F.

Supp. 3d 579, 580 (D. Mass. 2018); *Navarro*, 446 U.S. at 465-66. The District Court also

misquoted the Tenth Circuit, writing "[w]hen a trustee is a party to litigation, it is the trustee's

citizenship that controls for purposes of diversity jurisdiction" but omitting the immediately

adjacent clause ", as long as the trustee satisfies the real-party-in-interest test set out in *Navarro*."

*Dedoming*, 308 F. Supp. 3d at 580; *Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d

1175, 1181 (10th Cir. 2015). The two misquotations wrongly altered the meaning of *Navarro* by

deleting the required standard of real and substantial power over the assets and litigation for the

trustee's citizenship to control.

The District Court did not make findings of fact to establish the trustee met the required

standard of real and substantial power for the trustee's citizenship to control or that the

unincorporated entity was diverse. Citibank No. 2 previously parroted the misquotation in

*Dedoming* in filings before this Court and in appellate briefing; Citibank No. 2 was and remains

on notice that *Dedoming* is inapplicable case law.

## G. The Original Plaintiff, Citibank No.1, Was a Passive Trustee Without Real and Substantial Control Over the Unincorporated Entity

Filing pursuant to 28 U.S.C. § 1332(a)(1) exclusively, Citibank No. 1 neither pled facts to

establish it is an active trustee nor pled facts to establish SWDNSI 2010 was diverse. D. E. No. 1,

Complaint ⅌ 6. The complaint, therefore, failed to allege diversity. Further, evidence proved

Citibank No. 1 was "a purely naked trustee". *McNutt v. Bland*, 43 U.S. 9, 13-14 (1844).

Citibank No. 1 neither "manage[d] the assets" of SWDNSI 2010 nor "control[ed] the

litigation" nor made decisions regarding the loan. *Navarro*, 446 U.S. at 465. Citibank No. 2 et al.

did not dispute, before this Court or in briefing to the First Circuit, that the original plaintiff,

Citibank No. 1, did "not manage [SWDNSI 2010's assets] or dispose of [them]". *Long v. Halliday*,

768 F. App'x 811, 815 (10th Cir. 2019). Citibank No. 2 was a passive trustee.

1.    **Investment Advisor PNMAC Managed SWDNSI 2010's Assets, Not Citibank No. 1**

PNMAC Capital Management, LLC ("PNMAC") managed SWDNSI 2010's assets.

PNMAC, which was "registered with the Securities and Exchange Commission ('SEC') as an

investment adviser", "has management agreements with PennyMac Mortgage Investment Trust

("PMT") [and its subsidiary SWDNSI 2010]" whereby PNMAC "selects investments … and

places purchase and sale orders for investments on behalf of such entities." D. E. No. 375-2,

PNMAC's Parent 10-Q Note 1 at 1 (June 30, 2014); D. E. No. 375-3, PNMAC Part 2A of Form

ADV at 4; A173, PMT 10-K Report ("SWDNSI Trust Series 2010-3" is a PMT "Entity"). PNMAC

exclusively – with no input from the trustee – controlled the loans owned by SWDNSI 2010. D.

E. No. 375-3, Form ADV at 4.

Citibank No. 2 et al. did not deny that PNMAC had "sole investment discretion for [PMT

and its subsidiary SWDNSI 2010] … with respect to their respective assets and makes all decisions

affecting each client's assets". D. E. No. 375-3 at 4. Citibank No. 1 did not control the assets in

SWDNSI 2010.

2.    **Investment Advisor PNMAC Controlled the Litigation Strategy, Not Citibank No. 1**

Citibank No. 1 did not control the litigation strategy. Citibank No. 2 et al. did not deny

counsel was told how to proceed by PNMAC's asst. general counsel at the Local Rule 16.1(D)(3)

conference. D. E. No. 63, Local Rule 16.1 Certification at 2; D. E. No. 419-5, Eric Jorgensen.

PNMAC, not Citibank No. 1, had real and substantial power over SWDNSI 2010.

PNMAC, which was in control, was not diverse from the Najdas. PNMAC inherited the

citizenship of several entities, including HC Partners LLC. D. E. No. 158-4, Notes to Financial

Statements at 7 and 17 of exhibit (HC Partners LLC owned and had an "investment in …

'PNMAC'"). HC Partners LLC possessed the citizenship of all its members and was the conduit

through which the Boston based "Managing Directors of [Highfields Capital Management LP ('Highfields')] owned a minority interest in Private National Mortgage Acceptance Company, LLC." D. E. No. 158-5, Highfields Capital Management LP Part 2A of Form ADR at 14.

3.   **Citibank No. 1 Admitted It Did Not Make Decisions and Did Not Possesses Documents Related to the Note and Mortgage**

Citibank No. 1 was "a purely naked trustee", nothing more than a "mere conduit" without real and substantial control over SWDNSI 2010 because it admitted "it did not make any decisions" and "d[id] not [] possess any documents regarding the Najdas' Note and Mortgage". *McNutt*, 43 U.S. at 13-14; D. E. No. 375-1, Resp. to Interrogatory Nos. 8, 11; D. E. No. 110 at 5.

4.   **Citibank No. 2 Stipulated to the Exclusion of SWDNSI 2010's Trust Documents**

"Whether the trustee possesses such [real and substantial] powers is a question that is resolved based on the underlying trust document." *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop., LLC*, 859 F. Supp. 2d 602, 606 (S.D.N.Y. 2012). Citibank No. 2, though, stipulated to the exclusion of all trust documents and evidence of the authority of the trustee. D. E. No. 453, Nov. 2, 2017 Hr'g Tr. 41:6-8 ("we didn't produce [the trust documents] and … we would not be introducing it at trial"). As a result, this Court mooted the Najdas' motions *in limine* (D. E. Nos. 281, 289) to preclude the trust documents and evidence of the trustee's authority, which Citibank No. 1 had failed to produce during discovery. D. E. No. 312, November 2, 2017 Hr'g Notes.

Citibank No. 2 et al. cannot prove Citibank No. 1 was active by referencing any alleged documented powers because they were not made part of the record.

**Flowchart 2**

Is there subject matter jurisdiction when Citibank No. 1 files this action?

**Apply the *Navarro* Rule**
*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465-66 (1980)

What is the trust?

SWDNSI 2010 is an unincorporated entity

Determine if Citibank No. 1 has real and substantial control over SWDNSI 2010

- Citibank No. 1 neither controls SWDNSI 2010's assets nor controls the litigation
- Citibank No. 1 stipulated to the exclusion of the trust documents



Is the trustee active?

**No**
Citibank No. 1 does not have real and substantial control over SWDNSI 2010

SWDNSI 2010's citizenship controls for diversity jurisdiction

**Apply the *Americold* Rule**
*Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016)

Determine the citizenship of SWDNSI 2010

- SWDNSI 2010 inherits Massachusetts citizenship from PMT, a widely held Maryland real estate investment trust that has Massachusetts citizenship



Is there complete diversity?

**No**
SWDNSI 2010 and the Najdas share Massachusetts citizenship

The Court does <u>not</u> have subject matter jurisdiction

**H.**   **SWDNSI 2010's Citizenship Controlled Because Citibank No. 1 Was a Passive Trustee**

Since Citibank No. 2 was a passive trustee, without real and substantial power and control over the assets and litigation, when this action commenced, under *Navarro*, SWDNSI 2010's citizenship controlled for evaluating diversity. *Navarro*, 446 U.S. at 465-66.

**I.**   **SWDNSI 2010 Was Not Diverse**

**1.**   **An Iterative Enumeration of SWDNSI 2010's Ownership Structure Was Missing**

Citibank No. 2 et al. did not establish that SWDNSI 2010 was diverse from the Najdas. An enumeration of the unincorporated entity's entire ownership structure was conspicuously missing from the record before this Court and from appellees' briefs on appeal. *Americold*, 577 U.S. at 383 ("unincorporated [entity] … possesses the citizenship of all its members"). Without a full accounting of the citizenship that SWDNSI 2010 inherits, Citibank No. 2 et al. cannot prove by a preponderance of the evidence the unincorporated entity was diverse. SWDNSI 2010 is presumed to have shared Massachusetts citizenship with the Najdas when this action began.

**2.**   **Evidence Established SWDNSI 2010 Had Massachusetts Citizenship**

a)   SWDNSI 2010 Was an Unincorporated Entity

Plaintiff admitted SWDNSI 2010 was a Delaware statutory trust, which "means an unincorporated association". D. E. No. 1, Complaint ⁋ 3 ("SWDNSI Trust Series 2010-3 …, a Delaware Statutory Trust"); 12 Del. C. § 3801(g). It was <u>not</u> a fiduciary relationship like a traditional trust. Unlike a fiduciary relationship, which cannot sue or be sued, SWDNSI 2010 "may sue and be sued". 12 Del. C. § 3804(a).

b)   *Americold* Rule

"So long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members." <u>*Americold*</u>, 577 U.S. at 383.

15

c) Evidence That SWDNSI 2010 Had Massachusetts Citizenship

SWDNSI 2010 inherited Massachusetts citizenship from its member PMT, "a real estate investment trust [that] is an 'unincorporated business trust or association.'" *Americold*, 577 U.S. at 382 (citing Md. Corp. & Assns. Code Ann. § 8-101(c)); D. E. No. 375-5, PMT Declaration Article I; D. E. No. 375-4, PMT 10-K Report ("SWDNSI Trust Series 2010-3" is a PMT "Entity").

As a result, "the citizenship of each of that member's members … must then be considered." *D.B. Zwirn Special Opp. Fund, L.P. v. Mehrota*, 661 F.3d 124, 126-27 (1st Cir. 2011). This iterative process reveals that SWDNSI 2010 inherited Massachusetts citizenship from the members of PMT, which was widely owned, including State Street Corp., Clough Capital Partners LP, and FMR LLC. D. E. No. 375-6, State Street Form 13F at 99/124 (quarter ending 9/30/2014); *First Mortg. Corp. v. State St. Bank & Trust Co.*, 173 F. Supp. 2d 1167, 1170 (D. Utah 2001) (State Street has Massachusetts citizenship because its "principal place of business is in Massachusetts").

The lack of a complete accounting of SWDNSI 2010's ownership was sufficient to establish that SWDNSI 2010 was presumed to be not diverse. Further, the evidence of SWDNSI 2010's Massachusetts citizenship established that SWDNSI 2010 was not diverse.

**J.   There Was Neither Complete Diversity Nor Minimal Diversity When This Action Commenced**

There was not complete diversity when this action began because SWDNSI 2010's citizenship controlled it shared Massachusetts citizenship with at least one of the Najdas. Moreover, there was not minimal diversity when this action began because SWDNSI 2010 and each of the Najdas shared Massachusetts citizenship. This Court lacked subject matter jurisdiction from the start because Citibank No. 1 was the passive trustee of the non-diverse unincorporated entity SWDNSI 2010. *See* Flowchart 2 on page 14. Therefore, this action must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

16

## IV.     CONCLUSION

"We sum up briefly. [Since the original plaintiff Citibank No. 1 was the passive trustee of the non-diverse unincorporated entity SWDNSI 2010 when this action commenced,] [t]he jurisdiction which plaintiff posited under 28 U.S.C. § 133[2] was bogus because true diversity of citizenship was lacking". *Ne. Fed. Credit Union v. Neves*, 837 F.2d 531, 536 (1st Cir. 1988). Complete diversity, required by statute, did not exist at the start. "The district court never obtained jurisdiction over the subject matter of the suit." *Id*.

The Najdas respectfully request this Court enter an Order finding and concluding that there was neither complete diversity nor minimal diversity when this action commenced, that this Court lacked subject matter jurisdiction, and granting such other and further relief to which this Court finds the Najdas are otherwise entitled.

Respectfully submitted,

Andrew Najda and Renee Najda,
/s/ Andrew Najda
and
/s/ Renee Najda

71 Flint Road,

Date: January 30, 2023                    Concord, MA 01742

17

## V.        <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 30, 2023, I filed the foregoing document with the Clerk of the United States District Court for the District of Massachusetts via the CM/ECF system. All attorneys in this case who are registered CM/ECF users were served accordingly.


<u>/s/ Andrew Najda</u>
Andrew Najda