UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13593-GAO

CITIBANK, N.A., not in Its Individual Capacity but Solely as
Separate Trustee for PMT NPL FINANCING 2015-1,
Plaintiff,

v.

RENEE ANNA NAJDA, a/k/a RENEE NAJDA, and ANDREW NAJDA,
Defendants and Counterclaimants,

v.

CITIBANK, N.A., not in Its Individual Capacity but Solely as
Separate Trustee for PMT NPL FINANCING 2015-1, and CITIMORTGAGE, INC.,
Counterclaim Defendants.

OPINION AND ORDER
September 7, 2023

O'TOOLE, D.J.

On June 9, 2023, the Court of Appeals remanded this case for the limited purpose of clarifying whether Citibank, N.A., is properly considered to be of diverse citizenship from the defendants so that diversity of citizenship jurisdiction was properly invoked under 28 U.S.C. § 1332(a)(1). This Court requested that the parties submit their respective views on the question. Their responses are papers 498 through 502 on this Court's docket. Their principal responses are attached hereto for convenience as Exhibit A (Defs.' Mem. (dkt. no. 498)) and Exhibit B (Pl.'s Mem. (dkt. no. 500)). This Court concludes that Citibank's proposition is correct. The complaint is filed by Citibank as Trustee of the identified Trust. In their counterclaim, the defendants sued Citibank as Trustee. The Trust itself is not named or included as a party litigant.

The jurisdictional allegations agreed to by both Citibank and the Najdas demonstrated that diversity jurisdiction existed at the outset of the case, their positions having respectively been recited in their pleadings, Citibank in its complaint and the Najdas in their counterclaim. Their positions were consistent with the holding of Navarro Savings Association v. Lee, 446 U.S. 458, 464 (1980), that the citizenship of the trustee(s) of a business trust determines whether diversity of citizenship exists for purposes of § 1332.

Other First Circuit District Judges have followed the rule established by Navarro. See U.S. Bank Trust, N.A. v. Dedoming, 308 F. Supp. 3d 579 (D. Mass. 2018); 1900 Cap. Trust III by U.S. Bank Trust Nat'l Ass'n v. Sidelinger, Civ. No. 2:19-CV-220-DBH, 2021 WL 864951 (D. Me. Mar. 8, 2021); Ibanez v. U.S. Bank Nat'l Ass'n, C.A. No. 11-11808-RGS, 2011 WL 5928583 (D. Mass. Nov. 29, 2011). As Judge Young succinctly put it:

> Here, U.S. Bank Trust, N.A. is acting solely in its capacity as trustee of LSF9 Master Participation Trust. The trustee is acting for the trust in bringing and maintaining this action. Thus, the citizenship of U.S. Bank Trust, N.A., as trustee, is controlling for the purposes of diversity analysis. See U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386, 411 (S.D.N.Y. 2016).

Dedoming, 308 F. Supp. 3d at 580.

It should be noted that the substantive validity of a claim is not a factor in determining the question of diversity jurisdiction. That is clear from the plain language of § 1332(a)(1): "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" Section 1332 does not require any demonstration of a plaintiff's probable success as a substantive matter. A properly diverse plaintiff for purposes of determining federal subject matter jurisdiction may have no valid claim at all, but that is a matter of subsequent adjudication, most commonly by a motion by a defendant to dismiss the claim for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The defendants did not move to dismiss the original complaint under Rule 12(b)(6) or to require the presence of additional parties, such as the Trust as an entity, and accordingly the record is sparse as to the parties' views (if they had any) about what powers Citibank did or did not have as trustee or whether the Trust needed to be formally added as an additional plaintiff. But <u>Navarro</u> has essentially answered that question. In any event, whether an additional party or parties might have been required to be added or substituted as plaintiffs, the outcome of that question would have no effect on whether the parties actually named were of diverse citizenship or not, for purposes of subject matter jurisdiction under § 1332.

Further, to the extent it may be thought necessary to go beyond determining the citizenship of the parties and the amount in controversy based upon the uncontroverted factual allegations of the complaint, (i) the suit was brought by Citibank as Trustee, (ii) while Citibank remained in the case as a party plaintiff, it maintained suit in its own name without objection by the defendants, (iii) Citibank was named as the assignee in the Assignment of Mortgage from PennyMac Corporation that was attached to the complaint, and (iv) Citibank was identified as the entity for which the servicer acted when serving foreclosure-related materials attached to the complaint. Citibank appears to have controlled the litigation until Christiana Trust was formally substituted as the plaintiff. It thus appears that as far as the parties were concerned Citibank both had and exercised the customary powers to hold, manage, and dispose of assets for the benefit of others.

In sum, the original named plaintiff when the case was commenced was Citibank, N.A., as Trustee. The Trust was not a named party to the complaint.

Accordingly, what mattered in the assessment of whether diversity jurisdiction under §

1332 existed was Citibank's citizenship, which, it was not disputed, was in New York.


George A. O'Toole, Jr.
United States District Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CITIBANK, N.A., NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS SEPARATE
TRUSTEE FOR PMT NPL FINANCING 2015-1,
     Plaintiff,

v.

RENEE ANNA NAJDA et al.,                                      Case No. 14-13593-GAO
     Defendants,

v.

SANTANDER BANK N.A. f/k/a SOVEREIGN
BANK, Party-in-Interest,

RENEE ANNA NAJDA et al.,
     Defendants/Counterclaim Plaintiffs,

v.

CITIBANK, N.A., … FOR PMT NPL FINANCING
2015-1 et al.,
     Plaintiff/Counterclaim Defendants.

**DEFENDANTS' MEMORANDUM ON WHY THERE WAS NO EVIDENCE ADDUCED
AT THE TRIAL THAT CITIBANK NO. 1 HAD POWERS OVER THE TRUST
PURSUANT TO THE *NAVARRO* STANDARD**

**I.**      **INTRODUCTION**

     Defendants/Counter-Plaintiffs Renee and Andrew Najda (collectively, the "Najdas"),

respond to this Court's order for a memorandum "regarding their positions as to 'the powers of

Citibank as trustee vis-á-vis the trust,'" by stating there was no "evidence adduced at the trial that

Citibank [No. 1][1] had the customary powers to hold, manage, and dispose of assets for the benefit

---

[1] Citibank, N.A., as Trustee for the Benefit of SWDNSI Trust Series 2010-3 ("Citibank No. 1").
The original plaintiff.

1

of others" when this action commenced. Dkt. No. 496, Order; Dkt. No. 495, Second Remand Order at 2 (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980); *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691 (1st Cir. 2023)). At trial, plaintiff Citibank No. 2[2], PennyMac Loan Services, LLC ("PLS"), Specialized Loan Servicing, LLC ("SLS"), PennyMac, Corp. ("PMC"), and CitiMortgage, Inc. ("CitiMortgage") did not introduce "[r]elevant state law, trust documents, or other indicia of control" to prove by a preponderance of the evidence the original plaintiff, Citibank No. 1, was an active trustee, with real and substantial control, of SWDNSI 2010[3]. Dkt. No. 496. Citibank No. 2, undermining its ability to establish jurisdiction, stipulated to the exclusion of the trust documents and prevailed in excluding the note's ownership history from the trial.

In contrast, "[t]he record in this case [was] replete with undisputed documentary evidence[, included with the Najdas' motion for directed verdict brought during the trial (Dkt. No. 337),] that permit[ed] [this Court] to ascertain" that Citibank No. 1 was a passive trustee, without real and substantial power over SWDNSI 2010's assets and litigation. *Baker v. United Transp. Union*, 455 F.2d 149, 155 (3d Cir. 1971). Citibank No. 2, PLS, SLS, PMC, and CitiMortgage did not dispute the evidence that PNMAC Capital Management, LLC ("PNMAC") had "sole investment discretion for [SWDNSI 2010's]" assets and controlled the litigation strategy at the outset. Dkt. No. 337-3, PNMAC Part 2A of Form ADV at 4; Dkt. No. 63, Local Rule 16.1 Cert. at 2.

This Court's February 27, 2023 order, during the first remand, merely restated the *Navarro* standard as a "conclusory finding [as to Citibank No. 1's role as trustee], illuminated by no subsidiary findings or reasoning on all the relevant facts". *Atl. Thermoplastics Co. v. Faytex Corp.*, 5 F.3d 1477, 1479 (Fed. Cir. 1993). During the second remand, this Court cannot "identify and

---

[2] Citibank, N.A. not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 ("Citibank No. 2"). The third plaintiff after two substitutions.
[3] SWDNSI Trust Series 2010-3 ("SWDNSI 2010").

detail the 'evidence adduced at the trial that Citibank [No. 1]'" was an active trustee, with real and substantial control of SWDNSI 2010, because no such evidence was introduced at the trial. Dkt. No. 495 at 2. This Court, therefore, should report to the United States Court of Appeals for the First Circuit ("First Circuit") that no "evidence [was] adduced at the trial that Citibank [No. 1] had the customary powers to hold, manage, and dispose of assets for the benefit of [SWDNSI 2010]". *Id*.

## II.   REMAND HISTORY

### A.   First Remand

On December 30, 2022, the First Circuit "remanded to the district court for further fact finding and a determination whether there was minimal or complete diversity between the parties at the time the action was commenced". Dkt. No. 472, First Remand Order. On January 19, 2023, this Court ordered "the parties [to] file memoranda regarding their positions as to whether there was … diversity". Dkt. No. 473. The Najdas filed their memorandum as did Citibank No. 2 and CitiMortgage. Dkt. Nos. 479, 482, 483. However, PLS, SLS, and PMC did not file memoranda.

On February 27, 2023, this "court issued an 'Opinion and Order' concerning this issue (the 'Opinion')". Dkt. No. 490, Opinion; Dkt. No. 495 at 2. The Opinion included the "mere boiler-plate" that "it was clear from evidence adduced at the trial that Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others" "but unsupported by evaluation of the facts". *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 434 (1968); Dkt. No. 490 at 2. Upon conclusion of the first remand, the Najdas argued "[t]he [Court's] conclusory reference to the record provide[d] no basis for [the First Circuit] to validate the finding". *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 594 (1991); Najdas' Brief at 32, 1st. Cir. Case. No. 23-1284.

**B.**  **Second Remand**

"On review of the Opinion and the supplemental briefing, [the First Circuit] conclude[d] that a second remand [was] appropriate." Dkt. No. 495, Second Remand Order at 2 (citing *United States v. Twp. of Brighton*, 282 F.3d 915, 919 (6th Cir. 2002)). On June 9, 2023, the First Circuit "remand[ed] for the district court to identify and detail the 'evidence adduced at the trial that Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others,' referred to in the Opinion." Dkt. No. 495 at 2. "[I]n [the First Circuit's] view, the most relevant evidence would be that which establishe[d] the powers of Citibank as trustee vis-à-vis the trust on whose behalf Citibank first [had] filed suit." *Id.* On June 13, 2023, this Court directed the parties to "file memoranda, with citations to the record, regarding their positions as to 'the powers of Citibank as trustee vis-á-vis the trust,' and specifically as to whether 'Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others' at the outset of the litigation." Dkt. No. 496.

**III.**  **ARGUMENT**

**A.**  **Limited Scope of the Second Remand**

On remand, "a lower court 'should confine its ensuing inquiry to matters coming within the specified scope of the remand.'" *Biggins v. Hazen Paper Co.*, 899 F. Supp. 809, 816 (D. Mass. 1995) (quoting *Kotler v. The American Tobacco Co.*, 981 F.2d 7, 13 (1st Cir. 1992)). In the present matter, "jurisdiction over the case was in the court of appeals; the only issue before the district court by reason of [the First Circuit's] limited remand" was "for the district court to identify and detail the 'evidence adduced at the trial that Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others,' referred to in the Opinion." *United States v. Wooden*, 230 F. App'x 243, 244 (4th Cir. 2007); Dkt. No. 495 at 2.

4

The June 13, 2023 order for memoranda did not use the language "evidence adduced at the trial" even though the First Circuit's order had circumscribed the second remand, with the Opinion's language, to "detail[ing] the 'evidence adduced at the trial'". Dkt. No. 495, Second Remand Order at 2 (quoting Dkt. No. 490, Opinion at 2). Notwithstanding the missing language, this means "the district court lack[s] jurisdiction" to solicit or identify evidence outside the trial to attempt to explain the Opinion's conclusory finding that "it was clear from evidence adduced at the trial that Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others." *Wooden*, 230 F. App'x at 244; Dkt. No. 490 at 2.

B.  **No Evidence Was Introduced at the Trial Proving Citibank No. 1 Had Real and Substantial Control Over SWDNSI 2010**

To begin, there was no support in the trial record for the Opinion's conclusory finding. Neither Citibank No. 2 nor the other counterclaim defendants introduced evidence or testimony at the trial to prove by a preponderance of the evidence that Citibank No. 1 was an active trustee with real and substantial control over SWDNSI 2010, an unincorporated entity. Dkt. No. 1, Complaint ¶ 3 ("Delaware Statutory Trust"). Citibank No. 2 did not introduce evidence or testimony at trial to prove Citibank No. 1 had controlled SWDNSI 2010's assets. Nor did Citibank No. 2 introduce evidence or testimony to prove Citibank No. 1 had controlled the litigation strategy.

Citibank No. 2, not only indolent in meeting its jurisdictional burden, actively undermined its ability to establish jurisdiction. For instance, Citibank No. 2 stipulated to the exclusion of all trust documents. Dkt. No. 453, Nov. 2, 2017 Hr'g Tr. 41:6-8 ("we didn't produce [the trust documents] and … we would not be introducing it at trial"). Upon receipt of the stipulation, this Court mooted the Najdas' motions *in limine* (Dkt. Nos. 281, 289) to preclude the trust documents and evidence of the trustee's authority, which Citibank No. 1 had not produced during discovery. Dkt. No. 312, November 2, 2017 Hr'g Notes. Citibank No. 2, by its willful stipulation, cannot

attempt to cite the trust documents for customary powers. PLS, SLS, PMC, and CitiMortgage implicitly supported making it harder to establish jurisdiction because they failed to object.

Doubling down on leaving itself without a lifeline to establish jurisdiction, Citibank No. 2 brought a motion *in limine* to exclude the note's ownership history, which was granted. Dkt. Nos. 249, 285. Leaving Citibank No. 2 unable to prove Citibank No. 1 controlled the note "at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). Citibank No. 2, fixated on blocking such evidence, declared, "[t]he prior transfer of the note is completely irrelevant". Dkt. No. 437, Nov. 7, 2017 Trial Tr. 2-58:5-6. Likeminded, this Court ruled, "[t]he history of the transfer is just not getting in." *Id*. 2-58:12-13.

Derelict in meeting the jurisdictional burden, Citibank No. 2, PLS, SLS, PMC, and CitiMortgage cannot deploy the Opinion as a jurisdictional shield. Consistent with there being no evidence that Citibank No. 1 controlled SWDNSI 2010, this Court's Opinion neither cited a line of testimony nor named a piece of "evidence adduced at the trial that Citibank [No. 1] had the customary powers". Dkt. No. 490 at 2. In the face of that case, this Court should report to the First Circuit that no "evidence [was] adduced at the trial that Citibank [No. 1] had the customary powers to hold, manage, and dispose of assets for the benefit of [SWDNSI 2010]". Dkt. No. 495 at 2.

## C.    Evidence Established Citibank No. 1 Was a Passive Trustee

There was an absence of evidence that Citibank No. 1 was an active trustee. Not so for the inverse. Citibank No. 2, PLS, SLS, PMC, and CitiMortgage did not dispute the evidence, in the Najdas' motion for directed verdict at trial, that proved Citibank No. 1 was "a purely naked trustee", without real and substantial control, over SWDNSI 2010. *McNutt v. Bland*, 43 U.S. 9, 13-14 (1844); Dkt. No. 337. Evidence proved Citibank No. 1 neither "manage[d] the assets" nor "control[ed] the litigation" nor made decisions regarding the loan. *Navarro*, 446 U.S. at 465.

1.    **Investment Advisor PNMAC Managed SWDNSI 2010's Assets, Not Citibank No. 1**

PNMAC managed SWDNSI 2010's assets when this action began. Not Citibank No. 1. PNMAC, "registered with the Securities and Exchange Commission ('SEC') as an investment adviser", "ha[d] management agreements with PennyMac Mortgage Investment Trust ("PMT") [and its subsidiary SWDNSI 2010]" whereby PNMAC "select[ed] investments … and place[d] purchase and sale orders for investments on behalf of such entities." Dkt. No. 337-2, PNMAC's Parent 10-Q Note 1 at 1 (June 30, 2014); Dkt. No. 337-3, PNMAC Part 2A of Form ADV at 4; Dkt. No. 337-4, PMT 10-K Report ("SWDNSI Trust Series 2010-3" is a PMT "Entity"). PNMAC had "sole investment discretion for [PMT and its subsidiary SWDNSI 2010] … with respect to their respective assets and ma[de] all decisions affecting each client's assets". Dkt. No. 337-3, PNMAC Part 2A of Form ADV at 4. Importantly, Citibank No. 2, PLS, SLS, PMC, and CitiMortgage did not deny that PNMAC had "sole investment discretion". *Id.*

2.    **Investment Advisor PNMAC Controlled the Litigation Strategy, Not Citibank No. 1**

PNMAC controlled the litigation strategy and budget at the start. Not Citibank No. 1. At the Local Rule 16.1(D)(3) conference, PNMAC's "Assistant General Counsel, Mortgage Operations" directed Citibank No. 1's counsel on how to proceed with the litigation. Dkt. No. 63, Local Rule 16.1 Cert. at 2; Dkt. No. 419-5, Eric Jorgensen Profile. Prior to and during the first remand, Citibank No. 2, PLS, SLS, PMC, and CitiMortgage did not dispute that PNMAC, through assistant general counsel Eric Jorgensen, controlled the litigation strategy.

3.    **Citibank No. 1 Admitted It Did Not Make Decisions and Did Not Possess Documents Related to the Note and Mortgage**

There was more. Confirming PNMAC's controlling role and Citibank No. 1's passive position, Citibank No. 1 admitted "it did not make any decisions" and "d[id] not [] possess any documents regarding the Najdas' Note and Mortgage". Dkt. No. 337-1, Resp. to Interrogatory Nos.

8, 11; Dkt. No. 110 at 5. Citibank No. 1 was "a purely naked trustee", nothing more than a "mere conduit" without control of SWDNSI 2010's assets and litigation strategy. *McNutt*, 43 U.S. at 13-14. In keeping with the prior waiver, Citibank No. 2, PLS, SLS, PMC, and CitiMortgage did not deny that PNMAC made decisions, relevant to the *Navarro* standard, for SWDNSI 2010.

Citibank No. 2, PLS, SLS, PMC, and CitiMortgage wholly failed to rebut the compelling evidence proving Citibank No. 1 was a passive trustee, without substantive powers over SWDNSI 2010. Consequently, this Court should report to the First Circuit that there was no "evidence adduced at the trial that Citibank [No. 1] had the customary powers to hold, manage, and dispose of assets for the benefit of [SWDNSI 2010]". Dkt. No. 495 at 2.

## IV.    **CONCLUSION**

"[F]ederal courts are courts of limited jurisdiction, and . . . may exercise only the authority granted to them by Congress." *Commonwealth of Mass. v. Andrus*, 594 F.2d 872, 887 (1st Cir. 1979). When this action commenced, original plaintiff Citibank No. 1 was a passive trustee, without real and substantial control, of SWDNSI 2010, a Delaware statutory trust. Consequently, SWDNSI 2010's citizenship controlled for evaluating diversity. *Navarro*, 446 U.S. at 465-66. An unincorporated entity, SWDNSI 2010 inherited the citizenship of all its members rendering it and the Najdas co-citizens of Massachusetts. *Americold Realty Tr. v. ConAgra Foods, Inc.*, 577 U.S. 378, 383 (2016). Both minimal diversity and complete diversity were absent from the start.

The absence of subject matter jurisdiction was not an unimportant error of law. This action continuing for years, even though jurisdiction was lacking, caused a cascade of consequences. There was an unjust outcome for the Najdas: eight years of litigation expenses, thousands of hours spent researching and drafting, and charges for substantial accrued interest and payments that

would not exist had Citibank No. 2 acted competently and not brought an action without subject matter jurisdiction. The damage extended further.

Substantial judicial resources were expended. The First Circuit ordered two consecutive remands. On the first remand, this Court restated the *Navarro* standard as a conclusory finding even though there had been no "evidence adduced at the trial that Citibank [No. 1] had the customary powers to hold, manage, and dispose of assets for the benefit of [SWDNSI 2010]". Dkt. No. 495 at 2. After which, this action was "remand[ed a second time] for the district court to identify and detail the 'evidence adduced at the trial that Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others,' referred to in the Opinion." *Id*. To sum up, there is no such evidence to identify because none was introduced at the trial. An expected outcome because Citibank No. 1 was a passive trustee of SWDNSI 2010.

The Najdas respectfully request this Court report to the First Circuit that no "evidence [was] adduced at the trial that Citibank [No. 1] had the customary powers to hold, manage, and dispose of assets for the benefit of [SWDNSI 2010]" and enter an Order granting such other and further relief to which this Court finds the Najdas are otherwise entitled. *Id*.

<div style="margin-left: 40%;">

Respectfully submitted,

Andrew Najda and Renee Najda,
/s/ Andrew Najda
and
/s/ Renee Najda

71 Flint Road,
</div>

Date: July 11, 2023                Concord, MA 01742

V.   **CERTIFICATE OF SERVICE**

I certify that, on July 11, 2023, I filed the foregoing document with the Clerk of the United States District Court for the District of Massachusetts via the CM/ECF system. All attorneys in this case who are registered CM/ECF users were served accordingly.


/s/ Andrew Najda
Andrew Najda

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CITIBANK, N.A., NOT IN ITS INDIVIDUAL ) 
CAPACITY, BUT SOLELY AS SEPARATE )
TRUSTEE FOR PMT NPL FINANCING )
2015-1, )
  )
  )
  )
       Plaintiff, )
  )
v. )     Case No. 14-13593-GAO
  )
RENEE ANNA NAJDA *et al.*, )
  )
      Defendants, )
  )
v. )
  )
SANTANDER BANK N.A. f/k/a SOVEREIGN )
BANK, )
  )
      Party-in-Interest, )
_____)
  )
RENEE ANNA NAJDA *et. al.*, )
  )
      Defendants/Counterclaim Plaintiffs, )
  )
v. )
  )
CITIBANK, N.A. AS TRUSTEE FOR )
THE BENEFIT OF SWDNSI TRUST )
SERIES 2010-3, *et al.*, )
  )
      Counterclaim Defendants. )
_____)

## PLAINTIFF'S MEMORANDUM REGARDING THE ORIGINAL PLAINTIFF'S POWERS AS TRUSTEE

Plaintiff Citibank, N.A., not in its individual capacity, but solely as separate trustee for

PMT NPL Financing 2015-1 ("Plaintiff") hereby submits this memorandum regarding "the powers

of Citibank as trustee vis-á-vis the trust" and "whether Citibank had the customary powers to hold, manage, and dispose of assets for the benefit of others" at the outset of the litigation pursuant to this Court's June 13, 2023 Order. *See* ECF No. 496.

## ARGUMENT & AUTHORITIES

## I.   Determining Trustee Citizenship

The only remaining legal issue, which Defendants Renee and Andrew Najda (the "Najdas") are ultimately estopped from raising as a result of their repeated invocation and consent to this Court's jurisdiction, is whether the original plaintiff, Citibank, N.A., as Trustee for the benefit of SWDNSI Trust Series 2010-3 (the "Original Plaintiff"), commenced this litigation on its own accord in its capacity as trustee.[1]  Thus, it is essential to identify the legal standard applicable to determining the citizenship of corporates trustees for purposes of diversity jurisdiction.  A seminal decision on this point is *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 465 (1980).  There, eight individual trustees of a business trust organized under the laws of Massachusetts invoked diversity jurisdiction to bring a breach of contract action against a Texas citizen in federal district court.  *Id.* at 459-460.  After the court dismissed the matter for lack of subject matter jurisdiction, the Supreme Court affirmed the decision of the Fifth Circuit Court of Appeals to reverse.  *Id.* at 460. Importantly, the Court explained that it would not look to the beneficial shareholders of the underlying trust for purposes of diversity jurisdiction.  Rather, the Court stated in reference to the trustees:

> They have legal title; they manage the assets; they control the litigation.  In short, they are parties to the controversy.  For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the

---

[1] Plaintiff has recited the factual background, procedural background, and basic legal framework concerning diversity jurisdiction extensively.  For the purpose of this memorandum, which is the latest in a series of briefs concerning this issue, Plaintiff assumes this Court's and the parties' familiarity with the case history and undisputed principles of diversity jurisdiction.

citizenship of the trust beneficiaries.  We find no reason to forsake that principle today.

*Id.* at 455-456.

In *Americold Realty Tr. v. Conagra Foods, Inc.*, the Court distinguished *Navarro* on review of a case where a group of plaintiff corporations sued a real estate investment trust organized under Maryland law.  577 U.S. 378, 379 (2016).  There, the Court held that the trust itself was a citizen of every state in which its individual shareholders were citizens.  *Id.* at 382.  The Court acknowledged, however, that this left its ruling in *Navarro* undisturbed and stated that "*Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs – as is true of any natural person."  *Id.*

Courts in the First Circuit have applied *Navarro* in circumstances similar to the instant matter.  In *Ibanez v. U.S. Bank, N.A.*, for example, this Court found that "when a suit is filed by or against the trustee, so long as the trustee is a 'real party to the controversy,' the citizenship of the trustee – and not that of the beneficiaries – is at play."  No. 11-11808-RGS, 2011 WL 5928583, *2 (D. Mass. Nov. 29, 2011) (denying motion to remand) (citing *Navarro*, 446 U.S. at 464).  Similarly, in *U.S. Bank Tr., N.A. for LSF9 Mater Participation Tr. v. Dedoming*, this Court explained that in the case of a business trust, citizenship depends on (i) whether the trust is an incorporated entity and (ii) whether the trust or its trustees are parties to the litigation.  308 F. Supp. 3d 579, 580 (D. Mass. 2018) [hereinafter, *Dedoming*].  After invoking *Navarro*, the court stated, "The trustee is acting for the trust in bringing and maintaining this action.  Thus, the citizenship of U.S. Bank Trust, N.A., as trustee, is controlling for the purposes of the diversity analysis." *Id.* at 580.  Additionally, in *McLarnon v. Deutsche Bank Nat'l Tr. Co.*, this Court found complete diversity between the parties where the plaintiff mortgagor was a citizen of

Massachusetts and the defendant mortgagee, a trustee for a mortgage trust, was a citizen of California. No. 15-11799-FDS, 2015 WL 4207127, *3 (D. Mass. July 10, 2015).

To the extent that the Najdas dispute diversity jurisdiction based on the citizenships of the Original Plaintiff's shareholders, the Ninth Circuit recently disposed of such an argument in *Demarest v. HSBC Bank USA, N.A*, 920 F.3d 1223, 1228-1229 (9th Cir. 2019). In an opinion that thoroughly discussed the contours of citizenship for both trusts and trustees, the Ninth Circuit Court of Appeals found the case "easily resolved" where the trustee sued in its own name. *Id.* Shortly after issuing its decision in *Demarest*, the Ninth Circuit affirmed this approach in *Bank of New York Mellon v. Thunder Props., Inc.*, 778 Fed. Appx. 488, 489 (9th Cir. Sep. 25, 2019) (unpublished). There, where the trustee did nothing more than file suit in its own name, the court fully credited its jurisdictional allegations and noted that inferences were to be drawn in the trustee's favor in the absence of a factual attack on the pleadings. *Id.*

## II. First Circuit Precedent Compels a Finding that The Original Plaintiff Was the Real Party In Interest

Here, it is important to note that the Original Plaintiff has been absent from this litigation since the February 9, 2016 substitution of Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 ("Christiana Trust") as plaintiff. *See* ECF No. 96. Prior to that substitution, neither the Original Plaintiff's corporate identity nor the details of its role as a trustee were disputed or of any interest whatsoever. In fact, the Najdas pled counterclaims against the Original Plaintiff acknowledging its citizenship and invoking this Court's diversity jurisdiction. *See* ECF No. 13, ¶ 8; ECF No. 45, ¶ 8. The Najdas did *not* raise claims against the trust itself. This, without more, confirms that the Original Plaintiff had traditional trustee powers. *See Ibanez*, 2011 WL 5928583, *2 ("[W]hen a suit is filed by or against the trustee, so long as the trustee is a real party to the

4

controversy . . . the citizenship of the trustee – and not that of the beneficiaries – is at play.")
(internal citations omitted).  Additionally, as a consequence of the Original Plaintiff's dismissal
from this case at a relatively early stage in the litigation, there are few, if any, portions of the record
discussing the Original Plaintiff's powers as trustee.

The few portions of the record, or other publicly available records, that address the Original
Plaintiff indicate that it was indisputably authorized to commence this lawsuit.  First, consider
Exhibit F to the Original Plaintiff's Complaint.  Exhibit F is a June 24, 2014 Assignment of
Mortgage from PennyMac Corp., the Najdas' former mortgagee, to "Citibank, N.A., as trustee for
the benefit of SWDNSI Trust Series 2010-3" [the Original Plaintiff] recorded in the South
Middlesex County Registry of Deeds at Book 63818, page 527.  *See* ECF No. 1, Ex. F.  Notably,
the *trustee* was the named assignee, not the trust itself or any of its beneficiaries. Thus, this
Assignment irrefutably demonstrates that the Original Plaintiff, as the then-current mortgagee, was
authorized to commence this action when it filed the complaint on September 9, 2014.  It
maintained the action as trustee until its substitution in 2016.  Thus, it is the Original Plaintiff's
citizenship, rather than the citizenship of each underlying trust beneficiary, that controls for
purposes of diversity jurisdiction.  *See Dedoming*, 308 F. Supp. 3d at 580.  Insofar as the Original
Plaintiff was a citizen of New York and the Najdas were, and are, citizens of Massachusetts, this
Court's exercise of diversity jurisdiction was proper.  *See* ECF No. 1, ¶¶ 2, 4-5.

Other records appended to the Complaint also support this position.  For example, (i)
Exhibit G is a May 7, 2013 150 Day Notice of Right to Cure letter from Specialized Loan
Servicing, LLC ("SLS") to the Najdas and (ii) Exhibit H is a May 7, 2013 150 Day Notice of Right
to Request a mortgage Modification from SLS to the Najdas.  Both letters unambiguously state
that they are from "Specialized Loan Servicing LLC on behalf of Citibank, N.A., as trustee for the

benefit of SWDNSI Trust Series 2010-3[.]" *See* Compl., Ex. G, p. 2; Ex. H, p. 2. These letters demonstrate that, long before the Complaint was filed, the mortgage's servicer acted on the Original Plaintiff's behalf and accurately identified the trustee, not the trust, as the interested party.

Other publicly available documents support this conclusion. Consider, for example, the November 12, 2015 Assignment of Mortgage whereby the Original Plaintiff assigned its rights to the Najdas' mortgage to Christiana Trust. A copy of this document is attached hereto as Exhibit A. This record evidences a transaction whereby the Original Plaintiff acted in its capacity as trustee in respect of the Najdas' mortgage. Upon examination, for example, this assignment was executed not by the underlying trust but by a series of agents acting on the trust's behalf. The signature block reads:

> SWDNSI Trust Series 2010-3
> > By: *CitiBank, N.A., not in its individual capacity, but solely as certificate trustee*
> > > By: PennyMac Loan Services, LLC, its attorney-in-fact

Ex. A. (emphasis added). This delegation of authority belies any assertion that the underlying trust could have acted in its own capacity with respect to the Najdas' mortgage or the resulting litigation. To the contrary, the Original Plaintiff brought and controlled this action until it assigned the mortgage and was properly substituted by this Court.

Here, as in *Dedoming*, the Original Plaintiff "act[ed] for the trust in bringing and maintaining this action[.]" 308 F. Supp. 3d at 580. The pleadings and other records that reflect the state of affairs at the time of this action's filing support that conclusion.

## III. Conclusion

The record of the Original Plaintiff's status at the commencement of this matter is not the subject of any reasonable dispute. Rather, the records referenced herein indicate that the Original Plaintiff had the customary powers to hold, manage, and dispose of the underlying trust's assets.

This informs but one conclusion: *Navarro* and its First Circuit progeny compel this Court to find

that the Original Plaintiff was in fact the real party to this controversy at the time of filing.

Respectfully Submitted,

Plaintiff Citibank, N.A., not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1,

By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO# 667229)
kevin.polansky@nelsonmullins.com
Daniel M. Curran (BBO #709082)
Daniel.curran@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
p. (617) 217-4700
Dated: July 11, 2023                     f.  (617) 217-4710

<u>CERTIFICATE OF SERVICE</u>

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: July 11, 2023                                      <u>*/s/ Kevin P. Polansky*</u>

# EXHIBIT A



Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA  02109



2015  00201063
Bk: 66435 Pg: 466     Doc: ASM
Page: 1 of 3     11/25/2015 10:27 AM

## ASSIGNMENT OF MORTGAGE

Citibank, N.A., as trustee for the benefit of SWDNSI Trust Series 2010-3 holder of a mortgage, whose address is c/o PennyMac Loan Services, LLC, 6101 Condor Drive, Moorpark, California 93021

From: RENEE ANNA NAJDA A/K/A RENEE NAJDA

To: Mortgage Electronic Systems, Inc., as nominee for CITMORTGAGE, INC.

dated AUGUST 3, 2007 recorded with the MIDDLESEX County Registry of Deeds at BK:49913 PG:53

assigns said mortgage to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1, whose address is c/o PennyMac Loan Services, LLC, 6101 Condor Drive, Moorpark, California 93021

without recourse

IN WITNESS WHEREOF, the said Citibank, N.A. as trustee for the benefit of SWDNSI Trust Series 2010-3 has caused its corporate seal to be hereto affixed and these presents to be signed, in the name and behalf by _____ this 11|12|2015 .

SWDNSI Trust Series 2010-3
    By: CitiBank, N.A., not in its individual capacity, but solely as certificate trustee
        By: PennyMac Loan Services, LLC, its attorney-in-fact
            By:_____
                Michael Drawdy
                Senior Vice President, Asset Management

Property Address: 71 FLINT RD. CONCORD MA 01742-5347

State of _____, ss

On this _____, before me, the undersigned notary public, personally appeared _____, who proved to me through satisfactory evidence of identification, which was personally known, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____ (Affix Seal)
Notary Signature
My commission expires: _____

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Ventura _____ )

On _11/12_ 2015 _____ before me, _Cynthia Hoff, Notary Public_ _____
                                    (insert name and title of the officer)

personally appeared __Michael Drawdy__ _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

CYNTHIA HOFF
Commission # 2122120
Notary Public - California
Ventura County
My Comm. Expires Sep 2, 2019

Signature _____     (Seal)